### Harm Yunker v. Marshall & Daly.

1. BILL OF EXCEPTIONS—*Time of Signing and Sealing.*—Where the record fails to show when a bill of exceptions was signed and sealed, it will be presumed that it was presented to the judge and signed and sealed in proper time. Affidavits to show that it was not so signed and sealed can not be allowed to alter or change the record.

2. SAME—*Time of Filing—When Immaterial.*—The filing of a bill of exceptions is immaterial so long as it has been signed and sealed in apt time.

3. SAME—*Amendment by Affixing Seal.*—After the bill of exceptions has been filed, the judge may, at the term of court, on notice, amend it by affixing his seal.

4. SAME—*Effect of a Refusal to Allow the Bill to be Filed.*—The fact that the judge in term time, on motion, refused to allow a bill of excep-

tions to be filed, can not alter the presumption that it was presented and signed within the required time.

5. SAME—*Signing and Filing Nunc Pro Tunc.*—A bill of exceptions presented to the court within the time allowed and signed after the time, and ordered filed *nunc pro tunc,* will not be stricken out.

6. PRACTICE—*Challenge of the Array of Jurors.*—Where a party challenged the array of jurors because the same was not properly drawn, and his challenge was overruled, and he afterward asked leave to file his written motion and challenge to the array *nunc pro tunc* as of the day when the challenge was first made, which the court allowed but refused leave to file affidavits in support thereof, the refusal of leave to file the affidavits was held proper, as they were not presented until after the motion had been passed on and overruled by the court.

7. JURORS—*For Law Terms in County Courts.*—The irregularity in drawing a venire of eighteen competent jurors instead of twelve as provided in Sec. 200, Chap. 37, R. S., entitled "Courts," amounts to nothing.

8. SAME—*Overruling Challenge to the Array, When Not Reversible.*— Overruling a challenge to the array of the jurors will not be reversible error except where it is shown that a positive injury has resulted in consequence of the refusal of the court to quash the panel.

9. INSTRUCTIONS—*Presumptions Where They Are Not Preserved in the Bill of Exceptions.*—Where the instructions are not preserved in the bill of exceptions, this court will presume that the jury were instructed in such a manner as to correct any improper remarks that may have been made by the court during the trial.

10. TRIALS—*Improper Remarks of the Court.*—Where no exceptions are taken to the remarks of the judge during the trial, the making of such remarks can not be assigned as error in the Appellate Court.

11. PHYSICIANS—*Not Insurers of Success in Treatment.*—A physician is not an insurer of the success of his treatment, and is entitled to pay for his services whether he succeeds in curing his patient or not, provided he uses the skill of an ordinarily skillful physician.

12. APPELLATE COURT PRACTICE—*Abuse and Charges of Unprofessional Conduct in Briefs and Arguments.*—The practice of indulging in abuse and charges of unprofessional conduct, and in making unbecoming and uncalled-for insinuations against the motives of others, by attorneys in their briefs and arguments, does not tend to put their cases in a more favorable light in this court.

**Assumpsit,** for physician's services. Appeal from the County Court of Livingston County; the Hon. ALBERT O. MARSHALL, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

B. F. JONES, attorney for appellant; E. P. HOLLY, of counsel.

Torrance & Torrance, R. S. McIlduff and Geo. W. Patton, attorneys for appellees.

Mr. Presiding Justice Lacey delivered the opinion of the Court.

In this case the first thing we will be obliged to consider is the motion made by appellees to strike the bill of exceptions from the files, which motion was taken with the case at the December term of this court.

The record shows that the cause was tried by Judge A. O. Marshall, of Will county, on exchange with the county judge of Livingston county. The record shows that the judge tried the cause and finished the trial on the 24th of September, 1895, and entered an order on that day allowing the appellant to file bill of exceptions in sixty days, which time would expire on the 24th of November, 1895.

The record shows that the trial judge signed the bill of exceptions on the 22d of November, 1895, within the time required by the order.

The record does not affirmatively show that the bill of exceptions was not signed within the time allowed by the court, and affidavits filed in support of this motion can not be allowed to alter or change the record.

We must be guided alone by the record. Underwood v. Hossack, 40 Ill. 98.

When the record fails to show when a bill of exceptions was signed and sealed, it will be presumed that it was presented to the judge and signed in proper time. Village of Hyde Park v. Dunham, 85 Ill. 569.

The judge, after the bill was filed at a term of court on notice, amended it by affixing his seal. It is now in proper form, and we must presume was signed in proper time.

The filing is an immaterial matter so long as it was signed in apt time.

The fact that the judge in term time, on motion, refused to allow the bill to be filed, can not alter the presumption that it was presented and signed in the required time, and especially when the record affirmatively shows that it was signed by the judge November 22, 1895.

Notwithstanding the order of the court as to the time of filing the bill, it will be filed if it was signed within the time given.   40 Ill. 98, *supra;* Street Ry. Co. v. Morrison, etc., Co., 160 Ill. 289.

A bill of exceptions presented to the trial courts within the time allowed to the judge, and signed after the time, and ordered filed *nunc pro tunc,* will not be stricken out. Ferris v. Com. Nat'l Bk., 158 Ill. 237.

The motion to strike the bill of exceptions from the file will therefore be overruled.

This was a suit by J. A. Marshall and Victor M. Daly, under the firm name of Marshall & Daly, appellees, against the appellant, in an action of assumpsit to recover a bill claimed to be due them as physicians and surgeons for treating a dislocated shoulder of the appellant. The case was tried by a jury, and resulted in a verdict and judgment for appellees for $175.55.

The appellant pleaded the general issue and a special plea, that the appellees were, in treating him, so careless and unskillful in the discharge of their professional duties in and about the treatment of the appellant, that through such carelessness appellant became a cripple.

At the September term of the County Court appellant demanded a jury to try the cause. There was venire issued for eighteen jurors, returnable on September 11, 1895.

On the 12th of September appellant challenged the array of jurors, because the same were not properly drawn, which challenge was overruled by the court, and the cause was adjourned to the 19th of the same month. On that day, the court having convened, appellant asked leave to file his written motion and challenge to the array of the jury *nunc pro tunc* as of September 12, 1895. The court allowed appellant to file his written motion, but not the affidavits in support thereof, as no previous leave had been given to file affidavits. The court was justified in not allowing the affidavits in support of his challenge to the array to the jury, because they were not presented until after the motion had been passed on and overruled by the court.

Yunker v. Marshall & Daly.

Sec. 200, Chap. 37, Hurd's R. S., provides for the mode in which a jury panel shall be drawn. Unless otherwise ordered the manner of drawing is to be the same as in the Circuit Court. But in case there is no jury, and one shall be demanded, the court "shall order a venire to issue for twelve competent jurors," etc.

The point of the objection is that the venire was issued for a greater number than required by the statute, to wit, the number of eighteen.

Now we think the spirit of the statute, all its provisions considered, is that the court may issue a venire for more than twelve jurors, in case the court decrees a greater was needed.

The general drawing is to be the same as in the Circuit Court, and that act, Sec. 8, Chap. 78, R. S., requires the clerk to draw a "sufficient number," not less than thirty. The intention of the statute was to give such power as that the court would have enough for two panels after excuses and failure to serve were counted out. But as only one jury would be wanted, it would not be necessary for the convenience of the court to order a venire for more than twelve.

The legislature had no intention in restricting the number to twelve, of guarding the rights of litigants.

The irregularity, if any, amounts to nothing. Again, overruling a challenge to the array will not be held reversible error, where it is not shown that a positive injury has resulted in conseqence of the refusal of the court to quash the panel. The People ex rel. v. Madison Co., 125 Ill. 334, and cases cited. The objection that the court erred in not sustaining appellant's motion to suppress certain depositions taken by agreement, is not well taken.

The depositions were taken under stipulation, which waived all objection urged against them.

The objections that the court erred in making some remarks on the evidence of Dr. Graham is not well taken, for the reason that the court's remarks referred to no portion of the deposition read by the appellant, and furthermore, the instructions were not preserved in the bill of exceptions,

and this court will presume that the jury were instructed
in such a manner as to correct the effect of any improper
remarks, and besides, there appear to be no exceptions
taken to the remarks of the judge at that time.

We can see no substantial error on the part of the court
in not sustaining the objection of appellant to the hypothet-
ical questions and answers in the depositions.   As far as
we can gather from the abstract, the questions and answers
were correct.

The court did not err in not sending the cause to the Cir-
cuit Court for trial.   There was present an impartial judge
from another county, who had the power to try the case,
and there was no necessity of sending it to the Circuit
Court. ·

The last and final objection is, that the evidence fails to
support the verdict.   This point, also, we feel obliged to
overrule.

It appears from the evidence that on the twenty-fifth of
September the appellant was thrown from his buggy and
his left shoulder joint dislocated by the fall.   On the next
day Doctor Daly, one of the appellees, was called and
treated the appellant's shoulder and reduced the dislocation,
or at least the evidence tends to show it.   In three or four
days the appellant was directed to call, and did so, at the
doctor's office, and the shoulder appeared to be doing well.

The appellant was not again seen by either of the appel-
lees until the fourteenth day of November of the same
year.   When he was seen by Dr. Marshall, appellee, he
found the shoulder in anchylosed condition, and he was un-
able to move it, and the doctor told him if he would come
in and take anaesthetics, the adhesions could be broken and
by keeping up passage motion he might have a pretty fair
arm.

The next day appellant came to the doctor's office, took
the anaesthetics and one of the appellees proceeded to per-
form the operation, and in doing so, the axillary artery was
ruptured, which the evidence strongly tends to show is
rarely ever done under such treatment.   The next day the
appellee Dr. Marshall took the patient to Chicago to the

Yunker v. Marshall & Daly.

Presbyterian Hospital and called Dr. Graham, an eminent surgeon of Chicago, who performed a surgical operation on him. He cut down upon the blood vessel, cleaned out the cavity which was filled with blood clot, sought out the bleeding vessel, tied it, sewed up the wound and dressed it. It was the axillary artery that was ruptured. Dr. Graham testified that at that time the head of the humerus or head of the bone was in the socket, where it belonged. The appellant, however, never fully recovered from the wound and as the evidence tends to show, his arm is just stiff and the humerus out of place.

It is contended by the appellant that the dislocation of the shoulder was never in the first instance reduced and that caused the anchylosis and the necessity of breaking up the adhesions on the fourteenth of November, from which his subsequent trouble resulted. The great weight of testimony seems to show that appellees used reasonable skill in treating the dislocated shoulder, that the shoulder was properly reduced in the first instance, and that they used reasonable skill in all their subsequent treatment.

Several of the most eminent physicians of Chicago give it as their opinion that the appellees' treatment of appellant's wound was good practice in every step. Dr. D. W. Graham, Dr. J. E. Owens, Dr. Anderson and Dr. J. B. Hamilton all testify in their opinion that the appellees gave appellant's shoulder proper treatment.

One of the main points that appellant makes by his counsel is that if the shoulder had been properly reduced in the first instance, and anchylosis had set in, that it was not proper practice to break up the adhesions; that he would have gotten proper motion in the lapse of time without it. But the physicians spoken of say that that° was proper advice to give.

Speaking on this point, Dr. Owens says : " Patients don't always get the benefits that we hope they will get in cases where the shoulder has been dislocated, but that advice was such as a surgeon in good practice would give under the circumstances."

The evidence also tends to show that the rupture of the axillary artery necessitating the surgical operation to be performed in Chicago, and the performing of it, was the probable cause of the shoulder becoming again dislocated, if it was so. It is true that there was some opposing testimony to that given on behalf of the appellees, but the jury were the judges of the weight to be given to it.

A physician is not an insurer of the success of his treatment, and is entitled to pay for his services whether he succeeds in curing his patient or not, provided he uses the skill of an ordinarily skillful physician.

The appellant in this case has met with a most serious misfortune, but the evidence failed to show, in the estimation of the jury, that appellees were in any way to blame for it, or failed to treat appellant's shoulder in a reasonably skillful manner according to the practice of surgeons.

There appears to be much feeling in the case on the part of the parties litigant, and the attorneys on each side seem to participate in such feeling in an unusual degree. They so far forget themselves as to violate the rules of this court by indulging in abuse and in charges of unprofessional conduct and in making unbecoming and uncalled-for insinuations against each other's motives.

We wish to say that the use of such language in attorneys' briefs and arguments never tends to put their cause in a more favorable light before this court.

Seeing no reversible error in the record the judgment of the County Court is affirmed.