### Virgia V. Barton, Appellee, v. George E. Southwick, Appellant.

1. PHYSICIANS AND SURGEONS—*right to recover compensation.* A physician can only recover for valuable services rendered and if he does not use such reasonable care and skill as is ordinarily exercised by physicians practicing in his community, then he is not entitled to recover for such services.

2. JUDGMENTS—*res adjudicata.* After a *praecipe* and declaration for malpractice had been filed against a physician he sued the patient for compensation, before a justice of the peace, and obtained a judgment. The patient appeared before the justice and defended the suit. *Held,* the judgment estopped the patient from claiming malpractice and was a bar to such suit and a peremptory instruction should have been granted.

Action in case for malpractice. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the April term, 1911. Reversed. Opinion filed June 5, 1912.

GRAHAM & GRAHAM and STEVENS & HERNDON, for appellant.

W. ST. J. WINES, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

This is an action in case brought by Virgia V.

Barton against George E. Southwick, a physician and surgeon, to recover for alleged malpractice. Plaintiff recovered a verdict and judgment for $2,300.00 from which the defendant prosecutes an appeal.

The declaration avers that the defendant so improperly and negligently treated the plaintiff as to necessitate the removal of her uterus. The plaintiff, who is thirty-two years of age and had borne four children, only one of whom is living, testified that she first visited defendant at his office for treatment late in March, 1910, complaining of constipation and scanty menstruation; that the defendant gave her some medicine for her stomach and bowels; that she next saw him about the middle of June and asked for tablets for the bowels and the defendant told her she was pregnant, but that she insisted she was not and that the doctor gave her tablets for her bowels and a bottle of other medicine; that she took the medicine regularly through June, July, and up to August 18th, and that she had her monthly periods regularly, during all that time. The defendant testified that plaintiff visited him on April 7th, April 30th, and June 14th, and that on April 30th, she said she was pregnant; that he gave her a preparation of bismuth and hydrastis at the April and June visits to regulate her bowels, but that he gave her nothing that would affect the generative organs.

Plaintiff further testified that her monthly period was due August 18th, but that she began to flow the 16th and it continued the two following days. She also testified that she and her husband went to a park on the afternoon of the 18th; that the flow began after they got home that evening and that she discharged a quart of blood, although she had had no accident and nothing unusual had happened to cause it. About ten o'clock on the night of the 18th the plaintiff's husband went for the defendant and told him his wife was flowing badly and wanted him to go and see her at

once; the defendant told him he had a call to the country and advised him to get another physician, but the plaintiff's husband said the plaintiff did not want another physician and that defendant gave him some ergot with instructions to give her a dose every hour, and to call another physician if the flow was not checked by the third dose. The defendant visited the plaintiff the next morning and found a quart or more of blood in a vessel with blood on the floor and bedding. The evidence is conflicting as to what occurred thereafter, the defendant testifying that he only removed blood clots with a curette and took steps to prevent any further hemorrhage, while the plaintiff's evidence tends to show he claimed he was trying to remove a child. The defendant visited the plaintiff the next day and the day after that, when she was taken to a hospital and her uterus removed by a surgeon called by the defendant.

It is insisted on behalf of the defendant that a clear preponderance of the evidence shows that the plaintiff was troubled with a chronic degeneration of the uterus; that it was in such condition it would not hold stitches; that she had a spontaneous rupture of the uterus; that the removal of the uterus was therefore necessary when the defendant was first called, and that such condition could not have been caused by any treatment given by the defendant during the time he treated her; however, it is not necessary to pass on that question because of a legal question in the case.

The record contains a stipulation that the defendant in December, 1910, brought suit before a justice of the peace against the plaintiff and her husband "to recover compensation for services, including the visits on which it is claimed in the case on trial that the defendant was guilty of negligence; that Virgia Barton was a defendant in that suit brought by Doctor Southwick and is the same Virgia Barton who is plaintiff in this case; that counsel appeared on the hearing in

the trial of that case before the said justice of the peace representing the defendants; that the defendant in this case and plaintiff in that case, Dr. Southwick, testified on that trial to the rendition of the services upon which this action is based; that counsel for defendants in that case inquired of Dr. Southwick on that trial concerning the duration of his visits, what instruments he used and what use he made of them, and that judgment for compensation for the plaintiff for the said services was given against the defendants, Wesley Barton and Virgia Barton, as claimed by the plaintiff in the suit,'' and that the suit before the justice of the peace was commenced after the *praecipe* and declaration had been filed in the suit on trial.

An instruction was asked directing a verdict for the defendant, and another that if the jury believed from the evidence that the defendant brought suit against the plaintiff before a justice of the peace, to recover compensation for the services rendered at the time, when plaintiff claims that her cause of action in this case arose, and that plaintiff was represented by counsel in that suit brought by the defendant, and that defendant recovered judgment for compensation for the visits upon which it is claimed that a right of action in this case arose, they should find the defendant not guilty. These the court refused. The stipulation shows that the plaintiff appeared by her counsel and defended the suit brought by the physician to recover for his professional services; and that the physician did recover a judgment for his services against the plaintiff, who now claims damages against the physician for malpractice. A physician can only recover for valuable services rendered. If a physician does not use such reasonable care and skill as is ordinarily exercised by physicians practicing in his community, then he is not entitled to recover for such services, Yunker v. Marshall, 65 Ill. App. 667. In Howell v.

Goodrich, 69 Ill. 556; it was held that in a suit against a physician to recover damages for malpractice, a former suit by the physician against the patient in which the right to recover on the ground of malpractice was determined against the latter and a recovery had for the amount charged was a bar to the suit to recover damages for malpractice. The plaintiff in the present case having appeared before the justice of the peace and defended the suit, it necessarily results that the question whether or not the defendant, as a physician, was guilty of malpractice has been adjudicated. The judgment in favor of the physician for the identical services, out of which it is claimed the malpractice arose, precludes the patient from claiming she was not properly and skilfully treated. The plaintiff is estopped by the judgment before the justice of the peace, where she appeared at the hearing and took part in the trial, from now claiming that the physician was guilty of malpractice. Howell v. Goodrich (*supra*); Sale v. Eichberg, 105 Tenn. 333; Bellinger v. Craigue, 31 Barber (N. Y.) 534; Blair v. Bartlett, 75 N. Y. 150; Lawson v. Conaway, 37 W. Va. 159; Goble v. Dillon, 86 Ind. 327; 1 Herman on Estoppel, 235. It follows from what has been said that the trial court erred in refusing to give the peremptory instruction.

The judgment before the justice of the peace in favor of the physician is a bar to a suit for damages; the judgment is reversed.

*Reversed.*