## Virgia V. Barton, Appellee, v. George E. Southwick, Appellant.

1. PHYSICIANS AND SURGEONS, § 22*—*when evidence insufficient to establish malpractice.* In an action against a physician and surgeon for so improperly treating plaintiff as to necessitate the removal of her uterus, evidence *held* insufficient to show that the treatment by defendant was the cause making removal of uterus necessary.

2. DAMAGES, § 206*—*when giving of instruction allowing recovery for elements of damages not supported by evidence is error.* The giving of an instruction in an action for malpractice directing the jury to assess damages for the amount plaintiff had paid out or become liable for, for physician's fees, hospital bills and medicine, when there is no evidence to support either of such elements of damage, *held* error.

3. DAMAGES, § 189*—*sufficiency of proof of services and expenditures as elements of damage.* Where services and expenditures are elements of damage they are capable of pecuniary measurement, and the law requires that the amounts of the same shall be specially proved.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1913. Reversed and remanded. Opinion filed December 27, 1913.

GRAHAM & GRAHAM and STEVENS & HERNDON, for appellant.

W. ST. J. WINES, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an action of trespass on the case for malpractice. The declaration consists of three counts, each alleging that the defendant, Dr. George E. Southwick, was a practicing physician and surgeon and so improperly treated the plaintiff as to necessitate the removal of her uterus. To these counts the plea of general issue is filed. The trial resulted in a verdict for

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

plaintiff assessing her damages at the sum of two thousand three hundred dollars, on which verdict judgment was rendered.

When this case was originally before us we held that the action by plaintiff was barred by a judgment before a justice of the peace in favor of appellant in an action brought by him against appellee and her husband for services rendered her, and reversed the judgment without remanding the cause. *Barton v. Southwick,* 171 Ill. App. 217. On a writ of certiorari to the Supreme Court it was held that the said judgment did not bar the action and the cause was remanded to this court to pass upon the merits. *Barton v. Southwick,* 258 Ill. 515.

Two assignments of error are presented for consideration upon the merits, viz., that the verdict is contrary to the evidence and that the court erred in the giving of instructions. The principal contentions of the parties in regard to the evidence are noted in the opinion in 171 Ill. App. 217, and need not be here repeated. The chief element of damage claimed by appellee is the loss of the uterus, and the trial court instructed the jury that if they found for the plaintiff they should consider that fact in assessing her damages, and the question of primary importance is whether the uterus had to be removed on account of the negligence of appellant.

Appellee and her husband testify, in substance, that they spent the day of August 18, 1910, at a picnic at a park about three miles distant from the village of Chatham, where they lived; that they returned home about sundown on an interurban car, and when she reached her dooryard she commenced to flow excessively and she went into the house and laid down upon the bed; that her husband went after appellant to have him come and treat her; that appellant told him that she was going to have a miscarriage, that he could not call that night as he was about to make another call, but gave him some medicine for her to take and said he

would call the next morning. Appellee took the medicine, which stopped the hemorrhage that night and there was no subsequent flowing. This flowing resulted in the loss of about one quart of blood, which was preserved in a vessel and shown to appellant when he arrived the next morning. They further testify that as soon as appellant arrived in the morning, without making any examination of appellee, he again announced she was in a family way and was having a miscarriage, and without giving her any anaesthetic immediately inserted some instruments into the vagina and uterus and worked for one and one-half to two hours with them; that one was like an augur and he bored around with it. Another was long, slim and sharp pointed and was inserted in like manner. The third was like a pair of scissors with a crimp or hook on the ends of the jaws. They further testify that he inserted these instruments and caught hold of the flesh inside and pulled so hard that it took the combined strength of the husband and a neighbor, Mrs. Tucker, to hold appellee from being pulled off the bed; that two pieces of flesh were torn out of the inside of the uterus, which they claim appellant said were pieces of the child; that this pulling, boring and prodding with these instruments in this manner continued for nearly two hours, but no hemorrhage or flowing resulted therefrom; that finally appellee said she could not stand any more and appellant said he would tampon her and let it go until morning when the child and afterbirth and all would come together; that appellant called the next morning about nine o'clock and with his instruments again "worked away for half an hour"; that he then told appellee that he was mistaken about there being a child there and that it was nothing more than a tumor; that appellee's husband then said he wanted another doctor and it was agreed that Dr. Ottis of Springfield should be called, and Doctors Ottis and Rogers came out about one or two o'clock in the afternoon, and after an examination of appellee Dr.

Ottis announced that she was suffering from a rupture of the uterus. She was taken to a hospital in Springfield and operated on by Doctors Ottis and Bernard, and the uterus removed. Appellee and her husband are corroborated more or less by Mrs. Tucker and Mrs. Heffron, another neighbor, who was present the second morning when appellant was there.

Appellant testified that the medicine he gave for appellee to stop the flowing was ergot, which the undisputed evidence shows was a proper remedy, and was effective. He further testified that when he called on the morning of August 19th he sterilized his instruments in hot water, dilated the vagina with a speculum, removed from it all the blood clots, some of which were dark and resembled pieces of liver, with a curette, and tamponed the vagina with antiseptic wool tampons, which he pressed against and around the mouth of the uterus with a pair of dressing forceps; that none of these instruments penetrated the uterus; that he took nothing but the blood clots from the vagina, and that the whole treatment occupied not to exceed twenty minutes. He further testified that on the following morning he removed the tampons, washed out the vagina with an antiseptic solution and tamponed it again; that he told appellee and her husband that he considered her condition serious and that it might be necessary to have an operation performed; that he was not a surgeon and advised them to consult a surgeon and that Dr. Ottis was agreed upon; whereupon Dr. Ottis came out and made the diagnosis and operation hereinbefore mentioned.

The undisputed evidence in the case is that when Dr. Ottis performed the operation he found a rupture of the fundus of the uterus at a spot where there had been a chronic degeneration thereof; that the degeneration had proceeded to such an extent that when he attempted to sew the ruptured parts together the tissues would not hold the stitches, and he was compelled to remove the uterus entirely; that no pieces of flesh had been torn from the uterus; that it showed no evi-

dence of laceration or bruising, or of having been abused by the insertion of instruments; that the uterus itself was preserved by appellee, introduced on the trial and corroborates the above facts; that the rupture found in the degenerated portion of the fundus of the uterus was sufficient to have caused the excessive flowing; that this degenerated condition was sufficient to have caused the rupture therein; that the excessive flowing took place before the appellant did any of the acts complained of.

Any fair consideration of the above facts can lead to but one conclusion, viz., the excessive flowing was caused by a rupture of the uterus; the rupture of the uterus was caused by the chronic degenerated condition thereof; and that such chronic degenerated condition of the uterus was the cause of the necessity for its removal, and not anything the appellant may have done. We must hold therefor that appellant was not responsible for the removal of the uterus.

The second instruction given for appellee instructed the jury that among other things they should assess damages for the amount appellee had paid out or become liable for, for physician's fees, hospital bill and medicine, in endeavoring to be cured. There was no evidence to support either of these elements of damage and as the operation was performed by two surgeons of reputation and standing, and appellee was confined for nearly six weeks in the hospital in Springfield, by this instruction the jury would have the right to, and from 'the amount of the verdict probably did, allow substantial damages therefor, without any evidence on which to base them.

Where services and expenditures are elements of damage they are capable of pecuniary measurement, and the law requires that the amounts of the same shall be specially proved. *Krakowski v. Aurora, E. & C. R. Co.*, 167 Ill. App. 469; *Harley v. Aurora, E. & C. Ry. Co.*, 149 Ill. App. 339; *North Chicago St. R. Co. v. Fitz-Gibbons*, 180 Ill. 466. Under the evidence in this case it was error to give this instruction.

If there was any error in appellee's first instruction we think it was cured by appellant's second instruction.

The judgment is reversed and cause remanded.

*Reversed and remanded.*