# CASES

IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

SEPTEMBER TERM, 1877.

The Village of Hyde Park

*v.*

Dunham.

1. WRIT OF ERROR—*when it lies.* A writ of error is a writ of right, and can be prosecuted in all cases upon judgments of the circuit court when no other mode of review is provided.

2. An appeal or writ of error lies to the final judgment of the circuit court in a proceeding to condemn property by a municipal corporation for the purpose of widening a street.

3. BILL OF EXCEPTIONS—*presumption as to when allowed.* When the record fails to show when a bill of exceptions was signed and sealed, it will be presumed that it was presented to the judge and signed in proper time, and that the exceptions therein noted were taken on the trial and in the order and at the time therein purported.

4. SAME—*practice.* If a bill of exceptions is made or filed under circumstances not authorized by law, motion should be made in the court below to strike it out of the record, and if this is not done this court must regard it as rightfully a part of the record.

5. PRACTICE—*order of evidence as to damages on condemnation of property.* When real estate is sought to be condemned for widening a street, and the petition only describes the property to be taken, and a cross-petition is filed to recover compensation for damages to parts of the property not sought to be taken, it is error to require the plaintiff to enter upon proof as to the question of damages to the property described in the cross-petition, before the land owner has given any testimony in support of the claim.

6. A petition to condemn and take real estate for the public use need not describe property which is not sought to be taken or damaged, and if other property than that described in the petition is brought in by cross-petition, it is incumbent on the party thus bringing it in, to show in the first instance that it was taken or damaged, and the petitioner is entitled to give evidence in rebuttal.

7. DAMAGES — *on condemning land for street.* It is a question of fact, whether the diminution of a lot for the purpose of widening a street, impairs its value, and if the taking of a part of the lot sensibly impairs the relative value of that remaining, the lot owner is entitled to compensation, not only for the part taken, but also as to the remaining part.

8. But in determining whether the act of diminution has impaired the relative value of the remaining part, a partial effect only is not to be considered, but the whole effect, and the effect not upon any selected part of the tract, but upon the whole. In such case it is error to exclude the consideration of special benefits to the property not taken.

9. SAME—*when too remote.* The injury resulting to lots not taken for the purpose of widening a street by making lots on the enlarged street more attractive and desirable either for residence or business purposes, and thus diminishing the value of the former, is too remote to form the basis of a recovery.

10. Municipal authorities of cities and villages are vested with complete control over streets, and may contract or widen them when in their opinion the public good shall so require; and any damages sustained in consequence of the exercise of such power when property is neither taken nor directly damaged thereby, are too remote and contingent to be allowed.

11. CONDEMNATION—*right to discontinue proceeding.* There is no error in refusing to allow a municipal corporation to discontinue a proceeding to condemn real estate for the purpose of widening a street, as this may be done by ordinance at any time after the assessment of damages.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was a proceeding to condemn property, and assess the damages occasioned thereby, for the widening of a certain

street in the village of Hyde Park. Dunham, whose property was affected by the proceeding, prosecutes this writ of error.

Mr. C. H. WILLETT, and Messrs. LEAMING & THOMPSON, for the plaintiff in error.

Mr. THOMAS S. McCLELLAN, and Mr. WILLIAM HOPKINS, for the defendant in error.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

Two preliminary objections are raised by the defendant in error—first, that a writ of error does not lie in this case; second, that a proper bill of exceptions was not prepared and filed in apt time.

If no right of appeal is allowed, (which is also questioned by defendant in error) it is clear that a writ of error lies, for a writ of error is a writ of right. and can be prosecuted in all cases upon judgments of the circuit court, where no other mode of review is provided. *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 487; *Hall* v. *Thode*. 75 id. 173.

If the right of appeal is allowed, as we think it is, it is by virtue of sec. 129, art. 9, of the chapter entitled "Cities and Villages," (Rev. Stat. 1874, p. 234) which also recognizes, in language equally explicit, the right to prosecute a writ of error. So, in either view, the objection that a writ of error does not lie, is untenable.

It does not affirmatively appear, from the record, when the bill of exceptions was signed and sealed, and we must, therefore, presume it was presented to the judge, for that purpose, within proper time. *Underwood* v. *Hossack*, 40 Ill. 98. If the bill of exceptions was, in fact, made or filed under circumstances not authorized by the law, motion should have been made in the court below to strike it out of the record; and that not having been done, we can not do otherwise than regard it as rightfully a part of the record. *Myers* v. *Phillips*, 68 Ill. 269; *Wilder* v. *House*, 40 id. 92.

The presumption, from the face of the bill of exceptions, is, that the exceptions therein noted were taken on the trial, and in the order and at the·time therein purported. It professes to give a true statement of everything that occurred on the trial, and as it occurred; and we can not reconcile these statements with the idea that some of these things may have occurred at a different time. The record imports absolute verity. And when it is recited it was proposed to prove certain facts by A B, to which there was objection, but the court· overruled the objection and permitted the testimony to be given, and that, exception was taken to the ruling of the court, the fair and only reasonable construction is, that this all occurred in the order of the statement; and so occurring, the objection and exception must have been urged and taken at the proper time and place.

The point is made by the plaintiff in error, that the court below erred in compelling it to enter upon its proof as to the question of damage to lots, pieces and parcels of real estate not taken by the proposed improvement, and not mentioned in its petition, and to which the plaintiff in error claimed no damage was done, before the defendant in error had given any testimony in support of the claim first made in the cross-petition, of damage to such property. This, if true, we think, is well taken. Plaintiff in error was not required to describe property, in its petition, which was not taken or damaged, and if other property than that therein described was brought into the case on cross-petition, it was incumbent on the party thus bringing it in to show, in the first instance, that it was taken or damaged, and that he was, therefore, entitled to judgment on that account. The case would seem to be analogous to that wherein cross-bill is filed, after answer, praying for relief which can not be granted under the prayer of the original bill. In such case, so far as we call to mind, it is uniformly required that the complainant in the original bill limit his proof, in the first instance, to the allegations in that bill; but as to the cross-bill, he introduces evidence, only, to support his answer thereto and to overcome the case first made

by the evidence of the defendant introduced to sustain the allegations of the cross-bill. Here, then, the plaintiff in error was not required, in the first instance, to go into evidence with regard to property not described in its petition, and was entitled to give evidence in rebutting that offered by defendant in regard to such property.

But the defendant in error insists that, as a matter of fact, no damages were awarded, save in regard to property described in the petition of plaintiff in error, and that the question must, therefore, be narrowed down to this. The fact, as appears from the record, is as counsel insist; still, evidence was introduced in regard to the damage done to property not taken, and it is impossible to say that this evidence may not, in some degree, have affected the minds of the jury in coming to the conclusion announced by their verdict. It is very true, such evidence has no connection, either legally or logically, with the result announced; but it is plain, from an examination of the evidence, the verdict was a compromise, and, in such instances, it is but too often that trivial circumstances and considerations having no proper connection with the actual issues have important influence, and it is for this reason that all irrelevant evidence is required to be excluded from the consideration of the jury. But, inasmuch as the plaintiff in error covered the same ground by evidence given in chief, under the ruling of the court, we are not prepared to say that we should reverse merely because the order of introducing the evidence was not in accordance with what we regard as the better practice.

The object of this proceeding was to condemn property, and assess the damages occasioned thereby, for the widening of a certain street in "Hyde Park," one of the suburban villages of Chicago. Dunham, the defendant in error most largely interested, laid out and platted a sub-division, having a street, extending east and west on the north side, called Fiftieth street; then a tier of lots; then an alley; then a tier of lots; then what he denominated "Madison Avenue Park," being of the same length, east and west, as the sub-division, and 139

feet wide; then a tier of lots, and then Fifty-first street, which is the street proposed to be widened. Seventeen feet are to be taken from the south end of the tier of lots between "Madison Avenue Park" and Fifty-first street. and added to the street, thus making it 100 feet in width. The lots, as laid out, are 145 feet in depth, and, when the 17 feet are taken off, will, of course, be that much less—that is, 128 feet in depth. There is no controversy as to the value of the 17 feet actually taken, and there are but two modes by which, so far as we can perceive, it is possible for there to be damage to the property not actually taken—first, by reducing the size of the lots from which the 17 feet are taken below a desirable limit, and secondly, by making Fifty-first street a more desirable frontage than "Madison Avenue Park." and thereby inducing the building of outhouses. etc., on the south side of "Madison Avenue Park," instead of ornamenting it with the fronts of residences or business houses. The latter, obviously, can have no effect on the lots from which the 17 feet are taken, for the owners may still, if they choose, front on Madison Avenue Park, instead of on Fifty-first street; but it might, remotely, affect the value of the lots on the north side of Madison Avenue Park, by making the neighborhood and improvements around the park less inviting.

We do not question that there is a maximum and a minimum limit to the size of lots for residence or business purposes, beyond which the relative value of the lot must necessarily depreciate; and we recognize, as within common observation, that suburban lots may be very desirable for purposes of residence, which, by reason of location, can have, practically, but little, if any, value for business purposes.

What may be the peculiar adaptation of lots, in a given case, as well as what enlargement or diminution in size they will bear without impairing their relative value, are questions of fact to be determined from the evidence; and whenever it is established that, by the diminution of a lot, the relative value of that remaining has been sensibly impaired, there is certainly an actual injury, resulting as the direct and necessary conse-

quence of the act of taking, for which, under the constitution and the statute, the owner is entitled to compensation. It is patent to the observation of all, that the taking of even a third of a lot or tract of land, by reason of the place from or manner in which it is taken, might, virtually, render the remaining two-thirds unmarketable or unfit for use, unless at a cost in excess of all profits; and no mere play upon terms or definitions can justify the holding that this is not such damage as should, in justice and right, and as must, under the constitution and law, be compensated for. The damage is not imaginary or speculative, but real, substantial—as much so as if the act of taking also involved the partial dispossession of the part not taken, by physical violence. But in determining whether the act of diminution has impaired the relative value of the property, as was said in *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 328, and approved again in *City of Shawneetown* v. *Mason,* 82 id. 337, " a partial effect, only, is not to be considered, but the whole effect, and the effect, not upon any selected part of the tract, but upon the whole tract. This is not deducting benefits or advantages, but it is determining whether there be damages or not." And, therefore, inasmuch as the same act of taking the 17 feet from the south ends of the lots widens the street to 100 feet, it is proper to consider whether the widening of the street confers any special benefits or privileges upon the lot owner, tending to increase the value of the lot, as well as whether the deduction of the 17 feet tends to destroy its relative value, and then determine the result of the improvement as an entire act with reference to its effect upon the property.

The second and third instructions given at the instance of the defendant in error were as follows:

" 2. The jury are instructed that, in estimating compensation for land taken by the proposed improvement, and in estimating damages to the parts of the lots not taken. and to other lots no part of which is taken, general benefits, if any, resulting to all property owners in the vicinity, are not to be taken into

account; neither can the jury take into consideration special benefits, if any, which they may believe will accrue to the lots, or parts of lots, of the defendants, Dunham and Fitzgerald, taken.

"3. The jury are instructed that, in determining the just compensation to be made for the taking of a part or portion of any lot, or in determining the damage done to any lot no part of which is taken, they are not to consider any benefits or advantages which they may believe said lots, or parts of lots, or the owners thereof, will sustain by reason of the proposed widening of Fifty-first street, the law having provided that such benefits and advantages shall be ascertained, determined and assessed in another proceeding, and upon another different occasion than the present."

These instructions, it will be seen, are not in harmony with the views above expressed, since they require the question of damages to be determined without reference to special benefits to the property not taken. See, also, *Chicago and Pacific Railroad Co.* v. *Francis*, 70 Ill. 238.

The seventh instruction given at the instance of the defendant in error was this:

"7. If the jury believe, from the evidence, that the lots in the middle tier of lots in the sub-division offered in evidence by the defendants, will be directly damaged in consequence of the widening of said Fifty-first street, they will so find and state in their verdict; and if they so find, they will also find and state the amount of such damages as are incident to, or naturally flow from the taking of 17 feet from the south tier of lots in Dunham's sub-division."

This instruction is partially based upon what we have before alluded to as the second mode by which property is damaged. We think it very clear that the damages resulting from the widening of Fifty-first street, aside from the injury resulting by reason of contracting the size of the lots between Madison Avenue Park and Fifty-first street, are too remote to form a

basis of recovery in this or any other proceeding. The middle tier of lots, alluded to in the instruction, is the tier of lots immediately north of the park, and fronting upon it towards the south. The only injury the widening of Fifty-first street can have upon this tier of lots, so far as we are able to understand, will be in withdrawing attractive improvements from the end of the lots on the south side, next to the park, to the end next to Fifty-first street.

The corporate authorities of Hyde Park are vested with complete control, as is every other municipal corporation, over its streets. They may contract or widen them whenever, in their opinion, the public good shall so require. Property owners purchase and hold subject to these powers, and they have no vested right to deny the widening, contracting or otherwise improving any street. The damage which they may sustain in consequence of the exercise of such powers, where their property is neither taken nor directly injured thereby, is too remote and contingent to be susceptible of accurate computation; and if, for every such damage, compensation must be made, public improvements will become so burdensome as to be beyond the capacity of municipal corporations to bear. All city and village property is constantly liable to changes in values by reason of changes in centers of trade, and even by reason of changes in the judgments and prejudices of the citizens, and these may be and oftentimes are controlled or largely affected by public improvements being made of a more convenient and attractive character in the one locality than in the other; but for such damage it has never been attempted to make compensation, and we are unable to perceive any practicable way by which it could be done.

We are not unmindful that the verdict of the jury awarded no damages on account of the middle tier of lots, and that it would, therefore, seem this instruction could not have misled them. Yet, in alluding to the order in which the evidence was given, and commenting upon what we regard as the proper practice under the pleadings, we undertook to show that, the verdict being manifestly a compromise, it would be

37—85th Ill.

difficult to say what considerations may have influenced the determination. So, here, it is impossible to say this instruction may not have induced a juror to assent to a larger assessment of damages on the lots from which the 17 feet were taken than he would otherwise have assented to, under the impression that the lot owner was being denied something to which he was entitled on account of the middle tier of lots. But it is unnecessary to turn the case on this point alone, and we do not do so. The error in giving the second and third instructions we regard as vital, and sufficient to authorize a reversal.

The objection urged on account of the refusal of the court to allow the plaintiff in error to discontinue the proceedings, we do not deem important. This may be done by ordinance hereafter, as we have held in *Chicago* v. *Barbian*, 80 Ill. 482, and other cases.

We may say, in conclusion, on the evidence alone, we are not satisfied with the damages awarded. Those witnesses who speak of large damages, in giving their reason, show it has no basis but speculation and conjecture. Their opinions, instead of resting on tangible existing data, are made up of supposable contingencies, of the absolute certainty of scarcely one of which have they any assurance; and the jury seem to have been quite as uncertain in adopting a rule to go by as are the witnesses; for, on precisely the same evidence as to certain lots, they return they are damaged beyond the value of the 17 feet taken, while others in the same situation are not damaged. The evidence made no distinction between these lots, and the jury could not do so; but, as the parties affected make no complaint, we only allude to the fact as illustrating the uncertain and unreliable character of the verdict.

The judgment is reversed and the cause remanded.

*Judgment reversed.*