THE ILLINOIS TELEGRAPH NEWS COMPANY, Appellant, *vs.*
FREDERICK MEINE, Appellee.

*Opinion filed December 22, 1909.*

EMINENT DOMAIN—*rule as to damages for right of way of tele-
graph line.* In a condemnation proceeding by a telegraph com-
pany which seeks the exclusive use only of the land occupied by
the poles, the defendant's damages are the value of the land actu-
ally occupied by the poles and the decrease in value of the land
over which the wires are strung, resulting from the right of the
petitioner to use it jointly with defendant to the extent of string-
ing, repairing and maintaining the wires. (*St. Louis and Cairo
Railroad Co. v. Postal Telegraph Co.* 173 Ill. 508, adhered to.)

APPEAL from the Superior Court of Cook county; the
Hon. WILLARD M. McEWEN, Judge, presiding.

Appellant is a corporation duly organized under the
laws of the State of Illinois for the business of transmit-
ting telegraph messages, and is authorized, in the construc-
tion and operation of its telegraph lines, when necessary,
to take and damage property for that purpose. It filed its
petition in the superior court of Cook county for the con-
demnation of a right of way for its lines over land the fee
in which was owned by appellee but which is used and oc-
cupied as a public highway. Appellee's farm abuts upon
the highway a distance of half a mile, and it was in and
along this highway and adjacent to appellee's farm that
it was sought to secure the right, by condemnation, to erect
and maintain appellant's poles, cross-arms and wires. The
petition alleged that appellant did not desire to acquire title
in fee to the property but desired only the right to locate
its poles, cross-arms and wires, and to construct, repair,
maintain and use them over and upon said land. It was
stipulated by the parties that the poles of appellant should
be erected in a line parallel with and thirty feet north of
the center line of the highway; that the poles should be

placed one hundred and thirty-two feet apart along the land of appellee, and that the wires strung on said poles should be placed twenty-five feet above the ground at all gateways and openings into the premises of appellee from said highway. It was further stipulated that the value of appellee's farm is $500 per acre; that the poles would be two feet in diameter at the bottom and the cross-arms five feet in length. The court held that under the stipulation appellee was entitled to payment for a strip of land five feet wide and one hundred and sixty rods long, at the rate of $500 per acre. On this basis he figured out the damages appellee was entitled to at $151.50, and instructed the jury to return a verdict finding the value of the property taken at said sum. The jury returned a verdict accordingly, upon which the court, after overruling a motion for a new trial, rendered judgment. The petitioner excepted and prayed an appeal to this court, which was allowed, and the case is brought here for review.

HAMLIN & BOYDEN, for appellant.

CHENEY, EVANS & WILSON, for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

We regard this judgment as erroneous and contrary to the previous decisions of this court. The only land sought to be taken by appellant for its exclusive use was the land to be occupied by its poles. The poles upon which the wires were to be placed were two feet in diameter at the ground and twenty of them were to be set in the highway on appellee's land. The spaces between the poles were not sought to be taken, but the use thereof for the purposes of stringing, repairing and maintaining the wires was all that was contemplated or asked for. This use was not exclu-

sive but was to be enjoyed by appellant in connection with
the owner of the land. The compensation, therefore, ap-
pellee was entitled to for the use of the spaces between the
poles was not the value of the fee, but was the amount of
decrease in the value of the land resulting from the right
of the appellant to use it jointly with appellee for the con-
struction, repair and maintenance of its telegraph wires.
*Chicago, Burlington and Quincy Railroad Co.* v. *City of
Chicago,* 149 Ill. 457.

In *Lockie* v. *Mutual Union Telegraph Co.* 103 Ill. 401,
the petition sought to condemn a strip of defendant's land
eight and one-quarter feet wide for the erection, mainte-
nance and repair of telegraph poles and wires. In discuss-
ing the compensation the land owner was entitled to, the
court said (p. 402): "By designating the width of the
strip in the condemnation proceedings the company acquires
no right to exclude the owner of the soil from the use of
the land. That remains as it was before, except the com-
pany has acquired an easement on the strip condemned to
so enter for the purpose of erecting and repairing the line.
The only exclusive right of occupancy the company ac-
quires by such a proceeding is the ground occupied by the
poles erected for telegraph purposes. These are the rights
intended to be conferred by the law and are all that were
or can be acquired under it, and the judgment in this case
conferred no more."

The precise question here involved was fully considered
and determined by this court in *St. Louis and Cairo Rail-
road Co.* v. *Postal Telegraph Co.* 173 Ill. 508. The con-
tention of the parties in that case is stated by the court on
pages 531 and 532, as follows: "In the first place, the ap-
pellee claims that the compensation to be paid to the ap-
pellants must be the value of the ground occupied by each
of the telegraph poles erected upon the right of way; that
the land taken is nothing more than those portions of it
upon which the telegraph poles stand or into which they

are inserted; that the rest of the compensation to which appellants are entitled, other than for the land thus taken, consists merely of the damages accruing to the remainder of the right of way by reason of the erection of the telegraph poles and the stringing of the wires upon the cross-arms thereon, and that as to the spaces between the telegraph poles over which the wires near the top of the poles are strung, such spaces are not land taken. On the contrary, the appellants contend that by the construction and operation of the telegraph line the appellee not only takes the ground occupied by the telegraph poles, but that the strip of ground as wide as the cross-bars, over which the wires are strung, is also land taken. In other words, the appellants claim that the appellee takes that part of the right of way over which the wires, extending from pole to pole, are strung." Upon that subject the court said (p. 533): "The spaces over which the wires are strung from pole to pole are not taken by the telegraph company. Such damage as the construction and operation of the telegraph line cause to the spaces between the poles the appellants are entitled to recover. The telegraph company does not acquire, by the judgment of condemnation, the fee to any portion of the right of way. Any construction which holds that it does acquire the fee is not sanctioned by the language of the act in relation to telegraph companies. The act does not confer the right to use the land condemned for any other purpose than for telegraph purposes. The company cannot take possession of it or injure it for any other purpose than to erect telegraph poles and suspend wires upon them and to maintain and repair the same. The company will have the right to enter upon that portion of the right of way which is between the telegraph poles and under its wires for the purpose of repairing its line, but the telegraph company acquires no right to exclude the railroad company from the use of the land. The ownership of the railroad companies remains as it was be-

fore, while the telegraph company merely acquires an easement upon what it condemns for the purpose of entering thereon in order to erect and repair the line."

We will not encumber this opinion by further quoting from that decision, but much more will be found in the opinion of the court pertinent to the questions involved in this case. We could not sustain the judgment in this case without overruling *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co. supra,* and that we are not disposed to do, for in our judgment the correct rule is stated in that case. The court should have submitted the question of the amount of compensation appellee was entitled to, to the jury, under such competent evidence as the respective parties might introduce.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*