(No. 16973.—Reversed and remanded.)
THE ILLINOIS POWER AND LIGHT CORPORATION, Appellant, *vs.* WARREN TALBOTT *et al.*—(JOHN F. McCULLOCH, Appellee.)

*Opinion filed June 16, 1926.*

1. EMINENT DOMAIN—*when witnesses are competent to express opinions as to value or damages.* In a condemnation proceeding the market value of the land involved is not a question of art or science, requiring the testimony of experts, but any person acquainted with the land is a competent witness as to its value, and witnesses having knowledge of the value of the land affected are competent to state their opinions as to the amount of damage or benefit, subject to cross-examination as to the basis on which the opinions are formed; and the objection of lack of experience of a witness goes not to his competency but to weight of his testimony.

2. SAME—*what are not proper elements for basis of opinions of witnesses as to damages.* To warrant a recovery for damages to land not taken it must appear that there has been some proximate and direct physical disturbance of property or a right of property, by reason of which special damage results in excess of that sustained by the public generally; and opinions of witnesses not based on such elements but on remote, speculative or contingent injuries should be excluded, as such matters are not recognized by the law as elements entering into the damages which may be allowed the property owner.

3. SAME—*general rule as to burden of proof.* In a condemnation proceeding the burden is on the petitioner to show the fair

cash market value of land described in the petition which is actually taken or damaged, but the burden is on the property owner to prove damage to land not described but which he brings into the case by cross-petition.

4. SAME—*what is measure of damages to strip of land used for power transmission line.* Where a power company seeks to acquire an easement for a right of way three rods wide for a transmission line over farm land, the land in the three-rod strip not actually taken for the erection of the supporting towers is, in the meaning of the law, land not taken, and the measure of damage to such land is its depreciation in value for farm purposes caused by its subjection to the superior right of the power company to use it for the purposes of constructing, maintaining, operating and repairing its line, as stated in its petition to condemn.

5. SAME—*elements of damage are the same as in common law action.* As the right to damages to land not taken may be asserted by the owner as plaintiff in an action at law as well as in defense to a condemnation proceeding, if any supposed element of damage is not a proper subject of proof or of consideration in the common law action, it is not a proper subject of proof in the eminent domain proceeding or of consideration as affecting market value.

6. SAME—*depreciation of market value is not, alone, an element of damage to land not taken.* Depreciation in market value will not sustain a claim for damages to land not taken unless it is from a cause which the law regards as a basis for damages.

7. SAME—*inconvenience in farming may be considered in proceeding to condemn for right of way of power line.* Inconvenience in farming caused by the construction and maintenance of supporting towers of a power transmission line may be considered in determining whether there is a depreciation in the cash market value of the farm, and the land owner will be entitled to compensation for such depreciation in value, but in estimating such depreciation witnesses should not consider such elements as possible injuries caused by teams or tractors colliding with the towers or possible danger of fire or lightning.

APPEAL from the County Court of Warren county; the Hon. CLINTON M. HUEY, Judge, presiding.

BURTON & HAMILTON, J. W. CLENDENIN, GRIER, SAFFORD & SOULE, and BROWN, FOX & BLUMBERG, (CHARLES LEROY BROWN, of counsel,) for appellant.

L. H. HANNA, and MURPHY & KRITZER, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Illinois Power and Light Corporation on April 2, 1925, presented its petition to the judge of the county court of Warren county for the condemnation of sites for two supporting towers and an easement over a strip of land owned by John F. McCulloch three rods wide and 1112.6 feet long, for the construction, maintenance, operation and repair of a high-power electric transmission line from the Keokuk dam to Monmouth and Galesburg. At the time fixed for the hearing, McCulloch, the owner of the land, filed a cross-petition, alleging that he was the owner of the southwest quarter of section 27, town 10, north, range 3, west of the fourth principal meridian, of which the land sought to be taken was a part; that the quarter section had been fenced and managed as one farm, and that the taking of the land and the creation of the easement and construction of the power line as sought by the petition would greatly damage all the quarter section by depreciating its fair cash market value, and praying compensation for the damages so caused. A trial resulted in a verdict finding just compensation for the land taken to be $5.30 and the damages to the land not taken to be $1000, and a judgment authorizing the petitioners to enter upon the land described in the petition upon payment of the full compensation ascertained by the jury within sixty days. The petitioner has appealed, and the questions involved in the appeal relate only to the amount of the damages to the land not taken.

Before the introduction of any evidence, the jury, on motion of the appellee, was permitted to view the premises. The appellant then introduced the evidence of witnesses showing the location of the strip of land in question, the quantity of land included in it, the quantity of land taken for each tower, the method of construction of the

line, including the towers, and the manner and extent of the use to be made of the strip. From the evidence it appears that the three-rod strip sought to be condemned lies wholly in the southeast quarter of the southwest quarter of the section; that its center line crosses the south line of the southwest quarter 1007.1 feet west of its southeast corner, thence extends north 65 degrees 43 seconds east 1112.6 feet to a point in the east line of the quarter section 485.8 feet north of the southeast corner of the southwest quarter, and that the triangular part of the southeast quarter of the southwest quarter south of the three-rod strip contains about five acres. The transmission line is to be of wire, supported by steel towers about 650 feet apart, of which there will be two on the appellee's land. The towers are to be constructed of structural steel, with a leg at each of the four corners and diagonal and horizontal steel supports from leg to leg. Each leg is to be anchored ten or twelve feet deep in the ground to a ball of concrete from two to two and a half feet in diameter. At the foundation the area to be occupied by each tower is a trifle less than one-one-hundredth of an acre. The towers taper to the top, which is to be sixty-four feet above the ground. Each tower carries three cross-arms at a height above the ground of forty-four, fifty-two and sixty feet, respectively, with a conductor at each end, made up of six strands of aluminum wire and one of steel wire, to give additional strength to the conductor. The conductors are suspended from insulators, so that at the tower the lowest conductor is forty feet from the ground. The normal sag of the wires between towers is fifteen or sixteen feet, and at their lowest point the wires will never be lower than twenty feet above the surface of the ground. Each double circuit of the transmission line carries 66,000 volts of electricity. Should a conductor break or come in contact with anything to ground the current, circuit breakers, automatic oil switches at the Keokuk dam, will immedi-

ately operate to cut off the current from the conductor and render it harmless the instant it touches the ground. The strip of ground over which the easement is sought, including the two-one-hundredths of an acre upon which the two towers are to rest, has an area of 1.26 acres. The insulators are of porcelain and are subject to accidental or intentional breakage. The sites of the towers will be in the exclusive possession and under the exclusive control of the appellant, and the remainder of the strip of land will be subject to the appellant's use for the construction, inspection, maintenance and repair of the line. Subject to such use, the land included in the strip, except where the towers are to be, will be available for farming purposes, and the appellee will have the right to use and control it as completely as he ever had, except as his right may be interfered with by the exercise of the appellant's right.

The testimony of the four witnesses introduced by the appellant in chief who testified on the question of value and damages, tended to show that the land was worth $200 an acre and that the depreciation in value of the three-rod strip was from $30.76 to $100, each of those amounts being testified to by one witness, $50 an acre by another and $75 or $80 by the fourth. The appellant introduced no evidence in chief on the question of damages to land outside the three-rod strip described in its petition. The appellee then introduced six witnesses who testified that the land was worth $275 an acre; that the three-rod strip was damaged in amounts varying from $125 to its full value, and the rest of the land outside the strip was damaged from $6 to $25 an acre, one saying $6, one $10, two $15 and two $25. The appellant introduced seven witnesses in rebuttal, one of whom estimated the damages to the land outside the three-rod strip at $2 an acre, one estimated the total damage, including the strip, except the part occupied by the towers, at $200, one at $2 an acre and the other three at $300 to $350.

The appellant contends that none of the appellee's witnesses who testified as to the damages to land not taken was qualified to testify on that question because none of them had any experience or observation on which to base a correct judgment. The witnesses, who were all farmers owning land in Warren county and acquainted with the value of land, knew the appellee's farm and the location and character of the transmission line, but none of them had ever bought, sold or rented land having such a line crossing it or knew of any land having such a line crossing it being bought, sold or rented, or had had any experience with any such land. The question of the market value of land is not, however, a question of art or science, which must be shown by the testimony of experts. We have held that it is a question of fact to be proved as any other fact, and any person who is acquainted with the land is a competent witness as to its value. (*White* v. *Hermann,* 51 Ill. 243; *Keithsburg and Eastern Railroad Co.* v. *Henry,* 79 id. 290; *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 id. 413.) Witnesses having knowledge of the value of lands affected are competent to state their opinions as to the amount of damage or benefit that may result to the lands by reason of works constructed under the power of eminent domain. (*Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329; *Chicago, Peoria and St. Louis Railway Co.* v. *Nix,* 137 id. 141; *Spear* v. *Drainage Comrs.* 113 id. 632.) The jury will not be bound by the opinions, and the opposite party has always the right to test their value by showing the ground on which they are based, by cross-examination. (*McReynolds* v. *Burlington and Ohio River Railway Co.* 106 Ill. 152.) The objection of lack of experience goes not to the competency of the witness but the weight of his testimony. *City of Chicago* v. *Chicago City Railway Co.* 309 Ill. 448.

After the witnesses had testified and been cross-examined as to the basis of their opinions, the appellant moved

to exclude their testimony in regard to the depreciation of land not taken outside of the three-rod strip for the reason that such opinions were based upon elements of alleged damage which were too remote and not sufficiently reasonably certain to be the basis for opinions touching the value or depreciation of the land, and the basis of the opinions was of such a character that the alleged elements of damage included in the opinions could not be separated so as to tell how much of the damage included was predicated upon improper elements. The court denied the motion. This was error. Opinions of witnesses based upon supposed elements of damage which were not recognized by law as proper to be considered in condemnation proceedings should have been excluded. Only such opinions as are based on evidence of lawful elements of damage can be of benefit to a jury in the assessment of the amount of damage. *City of Kankakee* v. *Illinois Central Railroad Co.* 263 Ill. 589; *City of Kankakee* v. *Illinois Central Railroad Co.* 264 id. 69; *Illinois Central Railroad Co.* v. *Roskemmer,* 264 id. 103; *Mauvaisterre Drainage District* v. *Wabash Railway Co.* 299 id. 299; *City of Chicago* v. *Chicago City Railway Co.* 302 id. 57.

The appellant's contention that there is no sufficient evidence to sustain the judgment for damages to land not taken and that the damage allowed to land not taken is excessive raises the important questions in this case, which are as to the right of the land owner to have any damage assessed for land not taken outside the three-rod strip, and if there is any such right, as to the amount of the damage. Upon its petition the burden of proof was on the appellant to show the fair cash market value of the land it proposed to take for its towers and the damage to the part of the three-rod strip not taken for the towers. The measure of this damage is the depreciation in value of the three-rod strip for farm purposes caused by its subjection to the appellant's superior right to use it for the purposes mentioned

in the petition. (*St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 Ill. 508; *Board of Trade Telegraph Co.* v. *Darst,* 192 id. 47.) No other land was described in the petition, and the appellant was not required to introduce evidence as to any other land. The cross-petition brought in the remainder of the appellee's farm, and as to it the burden of proof was on him to show the damage to the land not taken. (*Village of Hyde Park* v. *Dunham,* 85 Ill. 569; *Chicago, Santa Fe and California Railway Co.* v. *Phelps,* 125 id. 482; *Stockton* v. *City of Chicago,* 136 id. 434.) The three-rod strip, except the part of it occupied by the towers, was land not taken. *Illinois Telegraph News Co.* v. *Meine,* 242 Ill. 568.

The constitution, in prohibiting the taking or damaging of private property for public use without just compensation, recognizes the right of the owner of property damaged by a public work to recover the amount of such damages. This right may be asserted by the owner as a plaintiff in an action at law where none of his property is actually taken, or as a defendant to an eminent domain proceeding for the condemnation of property actually taken. (*County of Mercer* v. *Wolff,* 237 Ill. 74.) In either case the right to the damages is the same, and its basis is the constitutional prohibition mentioned. This prohibition in our constitutions prior to that of 1870 extended only to the taking of private property. The effect of the addition of the damaging of property to the prohibition was first determined in *Rigney* v. *City of Chicago,* 102 Ill. 64, and the rule there declared has been followed in many decisions. That rule, and the rule of law as it existed at common law and under our earlier constitutions and the reasoning of the *Rigney case* in stating the rule, are succinctly stated in *Otis Elevator Co.* v. *City of Chicago,* 263 Ill. 419, where it is said (p. 423) : "By the common law, where a thing not *malum in se* was authorized to be done by a valid act of the legislature and was performed with due care and skill in con-

321–35

formity with the provisions of the act, its performance could not be made the ground of an action, however much one might be injured by it, and in all such cases the statute afforded a complete indemnity, notwithstanding the fact that the injury complained of would in the absence of the statute be actionable by the common law. With a view of preventing hardships and abuses resulting from that rule the framers of the constitution of 1848 inserted the provision therein contained that property should not be taken or applied to public use without just compensation. This court, giving a liberal construction to that provision, held in various cases that any direct physical injury to the property of a private person, such as overflowing his land and similar injuries by which he was substantially deprived of its beneficial use and enjoyment, was a taking of his property to the extent of the damage thereby occasioned. That construction, making actual physical invasion of property the test in every case, excluded many cases of great hardship, as in the case of Rigney, where there was no actual physical injury to the property but the approaches were so cut off and destroyed as to leave it almost valueless. The present constitution, doubtless with a view of giving greater security to private rights by affording relief in such cases of hardship, added the provision that private property shall not be damaged for public use without just compensation. In considering what additional classes of cases the framers of the present constitution intended to provide for, the rule adopted was, that it was not the intention to reach every possible injury that might be occasioned by a public improvement, and it was held that to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. The

foundation of the rule and the reason for it were stated in these words: 'In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law.' The doctrine of the *Rigney case* has not been modified, limited, extended or departed from in any degree."

Cases which have followed the rule in the *Rigney case* and illustrate its application are: *Chicago and Eastern Illinois Railroad Co.* v. *Loeb,* 118 Ill. 203; *Barrows* v. *City of Sycamore,* 150 id. 588; *Frazer* v. *City of Chicago,* 186 id. 480; *Doyle* v. *City of Sycamore,* 193 id. 501; *Aldrich* v. *Metropolitan West Side Elevated Railroad Co.* 195 id. 456; *Aldis* v. *Union Elevated Railroad Co.* 203 id. 567; *Illinois Central Railroad Co.* v. *Trustees of Schools,* 212 id. 406; *City of Winchester* v. *Ring,* 312 id. 544. It was expressly or by necessary implication held in the *Loeb case,* the *Aldis case* and the *Otis Elevator Co. case,* that the measure of damages and the rules of evidence are the same in an action at law as in a condemnation proceeding, and it is repeatedly said that it is clear that the provision in the constitution of 1870 was not intended to reach every possible injury that might be occasioned by a public improvement, and that to warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. The physical disturbance need not be a physical disturbance or direct injury of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object.

An illustration of a case of damage without injury mentioned in the *Rigney case,* for which no action would lie at common law and for which the constitution provided no remedy, was the building of a jail, police station, or the like, causing a direct depreciation in the value of neighboring property. *Frazer* v. *City of Chicago, supra,* was an action to recover damages for the erection and maintenance of a small-pox hospital across the street from the plaintiff's land. *Barrows* v. *City of Sycamore, supra,* was an action to recover damages for the erection of a standpipe 15 feet in diameter and 135 feet high in the intersection of two streets. The plaintiff was the owner of a hotel on the corner, and her declaration charged damages to the building because of depreciation in its value on account of the danger that the standpipe would fall or be blown over on the building and destroy or injure it or would burst and flood the building with water. *Doyle* v. *City of Sycamore, supra,* was an action of the same kind, for depreciation in the value of real estate caused by the erection and maintenance of the same standpipe as in the last mentioned case. In each of these cases the declaration was held not to state a cause of action. These were common law actions. *City of Winchester* v. *Ring, supra,* was an eminent domain proceeding to condemn for a cemetery a tract of 11.57 acres of land in the northwest corner of the appellant's farm. The owner's residence and farm buildings were 400 feet east of the tract sought to be condemned. Compensation for the land taken was fixed at $200 an acre and damages to the land not taken at $700. One ground for the land owner's appeal was that the damages for the land not taken were inadequate. It was held that there was no disturbance of a property right, and that the damage claimed merely affected the convenience, comfort or sensibilities of the occupants of the property, was not capable of proof or susceptible of measurement, was not different in kind but only in degree from that suffered by the people of the neigh-

borhood, was speculative and remote, and was therefore not within the constitutional provision.

The burden of proof was on the appellee to show damage to the part of the land not described in the petition and not included within the three-rod strip, and the ultimate fact which he was required to prove was a depreciation of the market value of the land because of conditions which would furnish the basis for a common law action. He must prove the same facts which he would be required to prove in a common law action. If any supposed element of damage is not a proper subject of proof or of consideration in the common law action, it is not a proper subject of proof in the eminent domain proceeding or of consideration as an element affecting the market value. The cases cited established beyond doubt that depreciation in market value will not, alone, sustain a claim for damages. The depreciation must be from a cause which the law regards as a basis for damages. "Testifying to amounts of damage where there is no basis of damage is of no value as evidence." (*Mutual Union Telegraph Co.* v. *Katkamp,* 103 Ill. 420; *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co. supra.*) The appellee, to recover damages to his land outside the three-rod strip, was required to prove a physical disturbance of a right which he enjoyed in connection with that land. His witnesses who testified to damages ranging in amount in their respective opinions from about $1000 to about $4000 did not state on their direct examination in what the damages consisted. They were cross-examined as to the basis of their opinions. None of them had any knowledge, acquired either by experience or observation, of the effect of a power line on the market value of land. The elements of damage which they took into consideration were danger of injury from electricity by reason of broken wires, danger from fire, danger from lightning, danger to crops by the towers being blown over, danger of trespass by the appellant's employees and others, and inconvenience

in farming. All these elements were not mentioned by all the witnesses but every witness mentioned some of them. Damages being recoverable only where there is a physical disturbance of a right of property, the mere fear of a remote and contingent injury which may possibly occur, but whose happening is altogether speculative and uncertain, is not regarded by the law as an element entering into the damages which may be allowed to the owner. The damages must be direct and proximate and not such as are merely possible or may be conceived by the imagination. *McReynolds* v. *Burlington and Ohio River Railway Co. supra; Illinois Central Railroad Co.* v. *Roskemmer, supra; Conness* v. *Indiana, Illinois and Iowa Railroad Co.* 193 Ill. 464; *St. Louis and Illinois Belt Railway* v. *Barnsback,* 234 id. 344; *Department of Public Works* v. *Griffin,* 305 id. 585.

Whether the line would expose persons and stock to danger was a question of fact, (*Telluride Power Co.* v. *Bruneau,* 41 Utah, 4,) and no evidence that it would do so was offered. Evidence was introduced by the petitioner to show that there was no danger except in case a wire should break and fall upon a person or animal before striking the ground. This evidence was uncontradicted and the contingency so remote as to furnish no basis for the allowance of present damages. The danger from fire, which was referred to, arose from the possibility that the employees of the appellant in inspecting the line might throw away lighted cigarettes and cause fire, which might extend into the land outside the strip. There was a remote possibility that this might occur. If it did it would be the result of a tortious act of the employee, for which the appellee would have his remedy against the person doing the wrong or perhaps against the appellant. The danger from lightning suggested was that the lightning might be conducted down one of the towers and might jump and injure anyone who was standing near. Danger was anticipated to crops if the towers should be blown over on the field while the crops

were on the ground.   Danger was also anticipated by tres-passes of the appellant's employees or others on the land of the plaintiff outside of the three-rod strip and also by the employees throwing down the fences at the ends of the strip and leaving it open.   All these imagined sources of danger were so remote, speculative and uncertain as to af-ford no basis for the allowance of damage which their an-ticipated occurrence might occasion.   The only other ground for the allowance of damage suggested was the inconven-ience in farming, and the only inconvenience suggested was the obstruction caused by the existence of the two towers on the ground.   These towers were twenty feet square, in the middle of the three-rod strip and fifteen feet from either side.   They were obstructions to some of the processes of planting, cultivating and gathering crops.   To the extent that the inconvenience caused by the construction and main-tenance of the towers and the existence of the right of the appellant to use the three-rod strip in the manner shown diminished the cash market value of the remainder of the farm the appellee was entitled to compensation for such diminished value.   One of the witnesses suggested that a horse might get a foot caught in the cross-brace of a tower and be severely injured, or a boy driving a tractor might run into the tower and be thrown off and injured.   Those contingencies are as remote as the other dangers antici-pated.   The opinions of the witnesses in this case have no basis in the facts of the case.   They all included elements of damage not proper for consideration as the basis of damages and ought not to have been submitted to the jury. They do not sustain the verdict.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*