(No. 16972.—Reversed and remanded.)
THE ILLINOIS POWER AND LIGHT CORPORATION, Appellant,
*vs.* ARTHUR PETERSON, Appellee.

*Opinion filed October 28, 1926.*

1. EMINENT DOMAIN—*right to damages is same as in action at law.* The right of the owner of property damaged by a public work to recover damages may be asserted by the owner as plaintiff in an action at law where none of his property is taken or as a defendant to an eminent domain proceeding for the condemnation of property actually taken, but in either case the right to damages is the same and is based on the provision of section 13 of article 2 of the constitution.

2. SAME—*what determines right to recover damages to property not taken.* To warrant recovery of damages to property not taken it must appear that there has been some direct physical disturbance of a right, either public or private, which the property owner enjoys in connection with his property and which gives it an additional value and that by reason of such disturbance a special damage is sustained in excess of that sustained by the public generally; and the fear of a remote and contingent injury which may possibly occur but which is altogether speculative and uncertain is not regarded by the law as an element entering into the damages which may be allowed.

3. SAME—*what is measure of damage to farm land not taken for power transmission line.* A strip of farm land over which a power transmission line is to be suspended and which is not actually taken for a supporting tower as described in a petition for condemnation is land not taken, and the measure of damage is the depreciation in value of the strip, exclusive of the tower site, for agricultural purposes caused by its subjection to the petitioner's superior right to use it for the purposes stated in the petition.

4. SAME—*owner has burden of proving damage to land not described in petition.* A petitioner for condemnation is not required to introduce evidence in respect to land not described in the petition as being sought to be taken or damaged, and where the owner by cross-petition brings in adjoining land the burden is on him to prove damage to such land.

5. SAME—*what is only proper element of damage to farm land not included in petition to condemn for power line.* In a proceeding to condemn a strip of farm land for the erection and maintenance of a power transmission line, the only proper element of

damage to surrounding farm land which is not included in the petition for condemnation and as to which no easement is sought, is the obstruction to or interference with farming processes which will result from the presence of the tower supporting the line and the right of the petitioner to use the strip in the manner and for the purposes designated in the petition, the damages being measured by the extent to which such obstruction diminishes the fair cash market value of the farm.

6. SAME—*witnesses must base opinions upon lawful elements of damage.* Witnesses giving opinions as to depreciation in market value of land not taken in a condemnation proceeding must base their opinions upon lawful elements of damage, and where such opinions are largely founded upon a consideration of improper elements they should be excluded as not a proper basis for a verdict.

APPEAL from the County Court of Warren county; the Hon. C. M. HUEY, Judge, presiding.

BURTON & HAMILTON, GRIER, SAFFORD & SOULE, and J. W. CLENDENIN, for appellant.

MURPHY & KRITZER, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Illinois Power and Light Corporation on June 12, 1925, presented its petition to the judge of the county court of Warren county to condemn a site for a suspension tower within and an easement across a tract of land owned by Arthur Peterson, for the construction, maintenance, operation and repair of a high-power electric transmission line from the dam across the Mississippi river at Keokuk, Iowa, through the counties of Hancock, Henderson, Warren and Knox to the city of Galesburg, in this State. The petitioner alleged that it was a domestic corporation engaged in business as a public utility, and that after a hearing the Illinois Commerce Commission, by an order entered on May 27, 1925, granted the petitioner the requisite certificate of convenience and necessity and the right to exercise the

power of eminent domain to acquire the right of way for the proposed power line.  Peterson, the owner, John Callahan, the tenant, and the Mid-West Airways Corporation, were made parties to the petition.  At the time fixed for the hearing Peterson filed a cross-petition, alleging that he was the owner of a tract of land comprising 61.73 acres, of which the strip sought to be taken was a part; that the land consisted of level, fertile, prairie soil and was well adapted for raising farm or garden products and live-stock; that it was also suitable as a field for aviation purposes; that the land had been managed as one farm, and that the creation of the easement and the existence of the power line would greatly damage the whole tract by depreciating its fair cash market value.  The cross-petition asked compensation for such damage.  The Mid-West Airways Corporation also filed a cross-petition, upon which the court entered an order finding that it had no such interest in the land as would warrant any damages or compensation to be awarded to it.  The trial resulted in verdicts assessing the damages of Callahan, the tenant, at $15, and fixing the compensation to Peterson for the land actually taken at $1.80 and his damages to the land not taken at $1049.31.  A motion for a new trial made by the petitioner was overruled, and judgment was rendered authorizing it to enter upon the land described in the petition upon payment of the compensation and damages awarded.  The petitioner prosecutes this appeal.

Peterson's tract of land is substantially the central 61.73 acres of the northwest quarter of section 5, township 10 north, range 2 west of the fourth principal meridian.  A public highway runs along the west boundary of the land. The easement sought is three rods wide and 1078.5 feet long and will run from west to east across Peterson's land, practically dividing it into two equal parts.  The area of the strip of land to be subjected to the easement is 1.23 acres, and within its boundaries appellant seeks the site for the sus-

pension tower. At its anchors underground the tower will occupy about 400 square feet, or slightly less than one one-hundredth of an acre, while at the surface it will occupy an area of 16 feet square, or about six one-thousandths of an acre. The construction of the same transmission line was involved in the case of *Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538, and reference is made to the opinion in that case for a particular description of the line and tower, the manner of their construction and the use appellant will make of the strip of land.

It was stipulated on the trial that the fair cash market value of appellee's farm at the time of the filing of the petition was $300 per acre; that appellant would restore any fence removed or damaged in the construction or operation of the power line; that the line would be patrolled only by appellant's employees on foot, and that appellant would not suspend any signal or telephone wires on or over the strip of land. No complaint is made of the compensation fixed for the site of the tower. The questions raised on this appeal relate solely to the sum awarded for damage to the land not taken.

The jury, on motion of appellee, viewed the premises. After appellant introduced the evidence of witnesses showing the location and area of the strip of land and of the tower site, the manner in which the tower and transmission line would be constructed and the use to which the strip of land would be put by appellant, four witnesses were called by appellee to sustain his cross-petition. These witnesses were retired farmers and had a general knowledge of conditions in the vicinity of appellee's farm. Their estimates of the damage to appellee's land not taken, arising from the construction and maintenance of the line and tower, ranged from $1500 to $3000. Each witness mentioned the necessity and inconvenience of making turns about the tower in farming operations, but none could state what portion of his estimate of the damages this item constituted.

Two of the witnesses thought that the existence of the tower and the transmission line would make the farm less salable and hence depreciate its value, but no facts were adduced upon which to base the opinion. Other elements of damage suggested were that the delivery of material to the tower site might compel the opening of fences; appellant's employees in entering upon the strip of land might trample the crops; the tower and line would be unsightly; appellant was a foreign corporation and the settlement of claims against it would be difficult, and the payment of taxes by the owner on the whole tract, although a portion of the land was used by appellant, would reduce the value of the land not taken. These witnesses were cross-examined concerning the bases of their opinions. None, it appeared, had any knowledge, acquired either by experience or observation, of the effect of the existence of a power line on the market value of agricultural land.

Two witnesses, both of whom owned farms in Tazewell county with power transmission lines running across them, were called by appellant. They testified that the only material damage to land not taken, arising from the construction and operation of the transmission line across appellee's land, would be the inconvenience caused by turning at the tower. One of these witnesses estimated the damages at $300 or $400 and the other at $200.

Appellant contends that appellee offered no competent evidence of damage to the land not taken; that the county court erred in admitting the evidence of appellee's witnesses on the question of such damage, and that the damages awarded by the jury were grossly excessive.

Section 11 of article 13 of the constitution of 1848 provided that a man's property should not be taken or applied to public use without the consent of his representatives in the General Assembly nor without just compensation being made to him. Section 13 of article 2 of the present constitution not only prohibits the taking but also the dam-

aging of private property for public use without just compensation. The right of the owner of property damaged by a public work to recover damages therefor is thus recognized, and may be asserted by the owner as a plaintiff in an action at law where none of his property is taken or as a defendant to an eminent domain proceeding for the condemnation of property actually taken. (*County of Mercer v. Wolff*, 237 Ill. 74.) In either case the right to damages is the same and is based on the present constitutional provision. (*Illinois Power and Light Corp.* v. *Talbott, supra.*) While the framers of that provision intended to afford redress in a certain class of cases for which there was no remedy under the former constitution, it was not their purpose to reach every possible injury that might be caused by a public improvement. To warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which the property owner enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. *Rigney* v. *City of Chicago*, 102 Ill. 64; *Otis Elevator Co.* v. *City of Chicago*, 263 id. 419; *Illinois Power and Light Corp.* v. *Talbott, supra; Illinois Power and Light Corp.* v. *Cooper,* (*ante*, p. 11.)

The three-rod strip, except the part to be occupied by the tower, is land not taken. (*Illinois Telegraph News Co.* v. *Meine*, 242 Ill. 568; *Illinois Power and Light Corp.* v. *Talbott, supra.*) Upon its petition appellant was obliged to show the fair cash market value of the land it proposed to take for the tower and the damage to the remainder of the strip. The measure of this damage is the depreciation in such value of the strip, exclusive of the tower site, for agricultural purposes caused by its subjection to appellant's superior right to use it for the purposes stated in the petition. (*St. Louis and Cairo Railroad Co.* v. *Postal Tele-*

*graph Co.* 173 Ill. 508; *Illinois Telegraph News Co.* v. *Meine, supra.*) No other land was described in the petition as sought to be taken or damaged, and appellant was not required to introduce evidence in respect of land not so described. Appellee by his cross-petition brought the remainder of his farm into the proceeding, and it was incumbent upon him, so far as that land was concerned, to show the damage to it. *Illinois Power and Light Corp.* v. *Talbott, supra; Village of Hyde Park* v. *Dunham,* 85 Ill. 569; *Chicago, Santa Fe and California Railway Co.* v. *Phelps,* 125 id. 482; *Stockton* v. *City of Chicago,* 136 id. 434.

Appellee, to recover damages to his land beyond the three-rod strip, was required to prove a physical disturbance of a right which he enjoyed in connection with that land. The elements of damage which one or more of his witnesses took into consideration were the effect of the existence of the tower and transmission line on the salability of the land; the necessity of opening fences to reach the tower site; possible trespasses by appellant's employees resulting in damage to crops; unsightliness of the tower and transmission line; the assumption that appellant is a foreign corporation and that the settlement of claims against it will be attended with difficulty; the assumption that the payment of taxes by the owner on the whole tract without abatement for appellant's limited use of the strip will depreciate the value of the land; and inconvenience in the use of the land for farming purposes owing to the existence of the tower and the easement. Of all these elements the only ground for the allowance of damages is the obstruction to or interference with certain farming processes which will result from the presence of the tower and appellant's right to use the strip in the manner and for the purposes designated. To the extent that such obstruction or interference diminishes the fair cash market value of the remainder of the farm appellee is entitled to damages. The other elements of damage detailed by the witnesses

involve no physical disturbance of a right of property, but are so remote, speculative and uncertain as to afford no basis for the allowance of damages.  If damage should result from the opening of a fence to reach the tower site or from some trespass by appellant's employees appellee will have his remedy.  Damage from such sources may never occur and cannot be anticipated in a condemnation proceeding.  Since damages are recoverable only where there is a physical disturbance of a right of property, the fear of a remote and contingent injury which may possibly occur but the happening of which is altogether speculative and uncertain is not regarded by the law as an element entering into the damages which may be allowed to the owner. The damage must be direct and proximate and not such as is merely possible or may be conceived by the imagination. *Illinois Power and Light Corp.* v. *Talbott, supra; Illinois Power and Light Corp.* v. *Cooper, supra.*

Only such opinions as are based on evidence of lawful elements of damage can be of benefit to the jury in the assessment of damages.  (*Illinois Power and Light Corp.* v. *Talbott, supra; Illinois Power and Light Corp.* v. *Cooper, supra; City of Kankakee* v. *Illinois Central Railroad Co. 263* Ill. 589; *City of Kankakee* v. *Illinois Central Railroad Co. 264* id. 69; *Illinois Central Railroad Co.* v. *Roskemmer, 264* id. 103; *Mauvaisterre Drainage District* v. *Wabash Railway Co. 299* id. 299; *City of Chicago* v. *Chicago City Railway Co. 302* id. 57.)  The opinions of appellee's witnesses were largely founded upon a consideration of improper elements and should have been excluded, since they do not form a proper basis for a verdict.

The judgment is reversed and the cause is remanded to the county court of Warren county.

*Reversed and remanded.*