The Southern Illinois and Kentucky Railroad Company (hereafter referred to as appellant) is an Illinois corporation, and under authority of its charter and an order of *Page 188 
the Interstate Commerce Commission is engaged in constructing a railroad from Edgewood, in Effingham county, Illinois, to Metropolis. As located the railroad will extend through Franklin county, and included in its right of way are two small triangular pieces of property off the west side of an irregularly-shaped farm of 34 1/2 acres belonging to appellees, C.M. and Barbara Wilhite, in that county. A public highway known as the Thompsonville-Marion road bounds the property of appellees on the west, and a portion of this highway bordering appellees' farm is also included in appellant's proposed right of way. It is necessary for appellant to provide another suitable highway in lieu of that taken, and it proposes to construct a forty-foot public road just east of the old road and parallel with its railroad right of way, across the west end of appellees' farm and other adjoining lands, necessary portions of which have been acquired for highway purposes. The re-location of the public road has been approved by the township authorities and two crossings under the railroad will be provided at points north and south of appellees' land. The farm house of appellees will be sixty or seventy feet east of the new road. The railroad embankment to be used is approximately eight feet in height where it crosses the property of appellees. The total amount of land included for the railroad right of way and public highway is .54 of an acre. Appellant filed its petition in the county court of Franklin county for condemnation of that portion of appellees' land required for its railroad right of way and the construction of the re-located public highway. Appellees filed their cross-petition praying just compensation for the land sought to be condemned and damages to the remainder of their farm. The cause was heard before a jury, which had by order of court previously viewed the premises, and a verdict was returned whereby appellees were awarded $54 as compensation for the .54 of an acre taken for railroad right of way and re-location of the public highway and $800 damages to *Page 189 
the remaining thirty-four acres of the farm. Motions for new trial and in arrest of judgment were overruled by the court and judgment entered in accordance with the verdict of the jury. From that judgment appellant has perfected an appeal to this court.
No question was raised as to the right of appellant to condemn the land for the purposes mentioned, and the only issue involved on the trial was the amount of compensation to be awarded for land taken and the amount of damages to land not taken. The sole ground upon which appellant relies for reversal is that the verdict of the jury awarding compensation for land taken and damages to land not taken is against the weight of the evidence and so excessive as to show it was the result of passion and prejudice.
As evidence in chief, appellant introduced the testimony of three farmers who had resided and owned farms in that community for several years and were familiar with land values. They testified the land was worth about $50 an acre and not to exceed $75 per acre, and the .54 of an acre of land to be taken was worth $25 or $30. Appellees presented the testimony of four witnesses. Two testified the land taken was worth $55, another valued it at $50, and the other at $50 to $100. Three of these witnesses valued the thirty-four acres of the farm at $3000, and the other at $100 per acre, or $3400. No sales of land in that vicinity were mentioned at such price per acre. Each of these witnesses testified that the damage to the remaining thirty-four acres of the farm was $1000. In rebuttal five witnesses testified for appellant, and the evidence of three of them as to damages to the remainder of the farm ranged from $100 to $200. One witness, a Thompsonville banker, also stated he knew of but one sale of real estate in the region south of Thompsonville at a price in excess of $50 per acre. The record discloses that farm was sold for $100 per acre to some parties for town-site purposes and as a speculation *Page 190 
on account of the new railroad being constructed. The owner who made that sale testified he tried to sell some of his other land at $50 per acre but was unsuccessful.
The first witness called in rebuttal by appellant testified the damage to the remainder of the farm would be $500 or $600. Appellant contends, and the record seems to warrant the contention, that this witness had prior to the trial advised attorneys for appellant that the damage to appellees' farm would not exceed $200, and for that reason the testimony given by this witness came as a complete surprise. During the examination of this witness it developed that the sum of $200 was mentioned in a conversation, prior to the trial, between counsel for appellant and the witness, but the latter testified he thought that sum was the value of the land taken. Such a value, it seems to us, would be extremely absurd, for the reason that it is almost four times as much as appellees claimed the land taken to be worth. We think the testimony of this witness should have received little consideration, if any, by the jury. The compensation awarded for the .54 of an acre taken for railroad right of way and the re-location of the public road was $54. It will be seen that such award must have been based upon a value of $100 per acre, which was the highest value placed upon the land by appellees. In fact, three out of the four witnesses for appellees valued the whole thirty-four acres at $3000, which is less than $100 an acre, and one of those witnesses stated he could not say when any land was sold for $100 an acre.
The strip of land taken for railroad and public highway purposes is small in quantity and is cut off of a part of the extreme west side of appellees' irregularly-shaped farm. The farm will not be divided and no buildings will be disturbed, though the dwelling house will be only a little over one hundred feet from the railroad embankment and about twenty feet closer to the public road. The most outstanding elements of damages mentioned by appellees' witnesses *Page 191 
are the existence of the railroad embankment; also noise, smoke and possible danger of fire caused by the construction and operation of the railroad. These conditions were taken into consideration by appellant's witnesses in stating the amount of damages to the thirty-four acres of the farm not taken. Some of appellees' witnesses also included additional causes of damages, such as that cattle, chickens and hogs might get on the dump and get killed, a team might get scared and some of the family might get killed, etc. Nothing should be allowed for imaginative or speculative damages or such remote and inappreciable ones as the imagination can conjure up as liable to happen in the future. The damages must be direct and proximate and not such as are merely possible or may be conceived by conjecture or surmise. (McReynolds v. Burlingtonand Ohio River Railway Co. 106 Ill. 152; Illinois CentralRailroad Co. v. Roskemmer, 264 id. 103.) A part of the sources of damage stated by the witnesses were speculative and uncertain and afforded no basis for the allowance of damage which their anticipated occurrence might occasion. It is true, this court has held in many cases that where the jury have viewed the premises and the verdict is within the range of the testimony, the judgment, on appeal, will not be disturbed unless there appears to have been a clear and palpable mistake or the verdict was the result of passion and prejudice. PublicService Co. v. Leatherbee, 311 Ill. 505.
In the examination of this record it appears that the jury gave practically no consideration to the testimony of appellant's witnesses, though nothing appears in the record tending to discredit them. The damages awarded by the jury for land taken were based upon the highest value given by appellees' witnesses. The damages awarded to the remaining portion of the farm were about one-fourth of its greatest total value as testified to by appellees' witnesses and almost one-half of its worth figured at $50 per acre, which from the record seemed to be a fair sale price or value of *Page 192 
lands in that community. It is not to be denied that in most, if not all, condemnation proceedings the testimony of the witnesses as to values and damages is at variance and takes a wide range. However, the damages must be based upon proper elements thereof, and a jury is not warranted in ignoring the evidence produced by one side or the other. We cannot know how the disagreeable incident with the witness called by appellant whose testimony was not in accord with what he told counsel he would testify to may have affected the jury, but for some reason the jury, without any apparent reason for so doing, practically disregarded appellant's evidence.
As we view this record, justice demands that the cause be submitted to another jury. The judgment is therefore reversed and the cause remanded.
Reversed and remanded.