(No. 20055.

THE ROCKFORD ELECTRIC COMPANY, Appellant, *vs.* AL-BERTINA JOSEPHINA BROWMAN *et al.* Appellees.

*Opinion filed April 17, 1930.*

Hall & Dusher, and William L. Pierce, for appellant.

North, Linscott, Gibboney, North & Dixon, for appellees.

Mr. Justice Heard delivered the opinion of the court:

Appellant, the Rockford Electric Company, a public utility corporation furnishing electricity, sought to condemn certain lands in which appellee Albertina Browman had the life use and appellee Fred Browman owned the remainder after the life estate, for use in connection with the construction and maintenance of a high-power transmission line. Appellees filed a cross-petition asking for damages to adjacent land not taken and setting up that such land was suitable and peculiarly adapted for aviation purposes and could be used as an aviation field or airport, and if the transmission system were constructed it would render the land useless for such purposes, and they asked for damages to such land not taken. A jury trial resulted in a verdict finding the total damages to the 58 acres owned by appellees to be the sum of $5500, divided as follows: First, for land taken as the site of one steel tower, the sum of $1800; second, for the depreciation of the easement strip described and set forth in the petition, excluding, however, the site

of one steel tower, the sum of $400; third, for damages to the 58 acres not taken and which are outside of the easement strip, the sum of $3300. Appellant moved for a new trial, and upon the hearing of such motion it was ordered that if appellees remitted the sum of $1795 from the $1800 item of the general verdict by October 29, 1929, the court would overrule the motion for a new trial but upon failure to do so the court would allow the motion. Appellees entered such *remittitur*, and the court entered a judgment order allowing appellees five dollars instead of $1800 for the land taken, $400 for the depreciation of the easement strip, and $3300 for the 58 acres not taken, making a total of $3705. From this judgment appellant has perfected an appeal to this court.

The land actually taken by appellant for the use of its transmission line on the land of appellees was .021 of an acre, upon which was located a steel tower with its anchor seven feet in the ground, the tower extending about 90 feet above the ground, made substantially like a windmill tower. At the top are three steel cross-arms, to which are attached insulators and to the insulators high-tension wires. The proposed construction of the high-tension line was the usual and ordinary construction adopted generally at this time in similar lines elsewhere in the State of Illinois and is an approved up-to-date construction. Appellees' land consists of two tracts, one of them north of the section line and the other south. The one to the north of the section line is 523 feet wide and 704 feet long. Upon this piece the steel tower was to be located and a right of way was to be taken 100 feet wide, 50 feet on either side of the center line of the transmission line. The area of this strip 100 feet by 523 feet is 1.2 acres. Deducting from this .021 for the tower site the balance of the land in the strip 100 by 523 feet, over which appellant sought to acquire an easement, is 1.179 acres. Appellees' other tract of land lies entirely south of the section line. It is not rectangular

in shape. Its north line, which is also the section line, is 1320 feet, its west line 1320 feet and its east line 1830 feet. No part of the transmission wires overhangs any part of appellees' south tract, but the center of the line is 20 feet north of the sectional line, on the land of persons other than appellees. Of this second tract the part sought to be condemned for an easement for right of way is a strip south of the section line and east of and adjacent to the south 30 feet of the 100 by 523 feet and is 30 feet wide by 797 feet, containing .55 of an acre.

In its petition appellant stated that it would not seek to acquire the fee and would not require or desire exclusive use or occupancy of the strip of land, except the portion occupied by the steel tower, but it desired only the right to the use of an easement upon and over the strip for the location, assembly, erection, supervision and oversight thereon of its tower and the suspension above and over the strip of land of the wires and cables, with the right also to maintain, operate and repair the structure, wires and necessary appurtenances, together with the right to enter upon the premises at the ends of the strip, and also the right to remove all trees growing on the strip, the right remaining in the owners forever of the use and enjoyment of the land not inconsistent with the easement.

The land in question is situated about seven miles east of the court house in the city of Rockford. Rockford is a large and rapidly growing city, its population having very greatly increased each year, from 50,000 in 1911 until the time of the trial. The testimony shows that the growth of the city has largely been toward the east and northeast. Many subdivisions have been laid out, and the land in question is about two and one-half miles east of the nearest subdivision. The other lands in the vicinity were all used for farming purposes. Some of the witnesses testified the best use of the land was for farming purposes, while witnesses for appellees testified that it was suited for an airport and

for an emergency aviation landing field, and that if the transmission line were installed its value for aviation purposes would be destroyed and its only value would then be for farming purposes. The reason assigned by some of appellees' witnesses why the land would not be suitable for aviation purposes was, that in "taking off" the wires would be dangerous to the voltage—*i. e.*, that if a man flying along there happened to hit the wires it would be very liable to set the ship on fire. Witnesses for appellees testified that if the transmission line went to the highway to the north and east of appellees' north tract it would still interfere with the property for a landing field. The testimony of only one witness on behalf of appellees as to value was allowed to stand. He placed the value of the land for airport purposes at $800 an acre, and said that its depreciation in value if the transmission line were built would be the difference between that sum and the value of the land for farming purposes. No witness for appellees differentiated between the damage to the two strips, respectively 100 feet and 30 feet wide, and the rest of the land. The witnesses for appellant fixed the depreciation in value of these strips at much less than $400.

At the request of appellees the court instructed the jury in part as follows:

"The court instructs the jury that, if you believe from a greater weight of the evidence that the tract of land owned by the respondents, and through which the petitioners propose to acquire an easement of 100 feet in width along the right of way of said proposed electric transmission line, did, on the 21st day of September, 1929, have a then present capacity for use as an aviation field or an airport, and that such use could be reasonably anticipated with certainty in the near future, and made the basis of an intelligent estimate of value, and if you believe from a greater weight of the evidence and your view of said land that the fair cash market value of said land, as it existed on September 21,

1929, will be depreciated by reason of constructing said transmission line as aforesaid, then your verdict should be for compensation equal to the amount said fair cash market value will be diminished, if any, as shown by the evidence and your view of the premises."

And also gave the jury this instruction:

"If you believe from the evidence and your view of the premises that the right of the respondents of ingress and egress to and from their property from the air or from the land, will be disturbed or interfered with by the petitioner by the erection of and maintaining of said transmission tower and transmission line and that the fair cash market value of said property belonging to said respondents will be damaged thereby, then your verdict should be for an amount which shall compensate said respondents, for any such depreciation in the fair cash market value of said lands, if any, as shown by the evidence and your view of the premises."

The giving of these instructions is assigned as error by appellant. In the court's instructions to the jury, and in the jury's verdict, it was erroneously assumed that the easement was to be 100 feet wide for its whole length, whereas it was 100 feet wide for the west 523 feet and only 30 feet wide for the east 797 feet. In a condemnation suit of this character it is the duty of the jury to assess damages separately for the land taken, for the depreciation in value, by reason of the easement, of the part subject to the easement, and for the depreciation in value, if any, to the land not taken by reason of the construction of the transmission line; and a witness giving testimony as to such damages should not be allowed to give the same in bulk but should be required to give his estimate in detail on each one of the three grounds separately. In the condemnation of an easement for a high-power electric transmission line, damages recoverable for property not taken must be based on some direct physical disturbance of a right of property, and cannot be allowed

on account of any claimed depreciation due to mere fear, founded upon lack of knowledge and not justified by the fact, that the heavily charged electric lines located on the property would expose persons and property to damages. (*Illinois Power and Light Corp.* v. *Cooper,* 322 Ill. 11 ; *Illinois Power and Light Corp.* v. *Parks,* 322 id. 313.) Depreciation in market value will not sustain a claim for damages to land not taken unless it is from a cause which the law regards as a basis for damages. (*Illinois Power and Light Corp.* v. *Talbott,* 321 Ill. 538.) To entitle a claimant in a condemnation proceeding to compensation for damages to land not taken he must prove by competent evidence that there has been some direct physical disturbance of a right, either public or private, which he enjoys in connection with his property, causing him special damages in excess of those sustained by the public generally, and the damages must be direct and proximate and not merely such as are possible or may be conceived by the imagination. *Illinois Power Co.* v. *Wieland,* 324 Ill. 411.

While the above instructions assume that the strip to be condemned extends clear across appellees' land, there is no physical contact between the east 797 feet of appellees' property and the transmission line either on land or in the air. The entire line near such portion of appellees' property, in so far as it is in contact with the land or the air above, is in contact only with the property of another, and none of such portion of the line is suspended in the air over appellees' land or over land in, to or over which they have any rights. While appellees have a right to the unrestricted ingress and egress to and from their land, this does not mean that they have an unrestricted easement therefor over the land north of theirs over which such transmission line is built, either on land or in air, or that they have an unrestricted right of ingress and egress to or from their property over the land or through the air to the north of such 797-foot strip, and no such right is shown by the evidence.

No such right being shown by the evidence, appellees are not entitled to any damages for land not taken by reason of a depreciation of their right of ingress and egress by reason of the construction of the transmission line immediately north of such 797-foot strip.

In another instruction the court told the jury that they might fix the compensation to be paid appellees "at such sum as you may believe from the evidence and your view of the premises will equal the said value of such lands so taken and the amount, if any, of said damage to land not taken." Evidence was admitted as to possible damage to airships coming in contact with the wires of the transmission line. Nothing should be allowed for imaginary or speculative damages or such remote and inappreciable ones as the imagination can conjure up as liable to happen in the future, but the damages must be direct and proximate and not such as are merely possible or may be conceived by conjecture or surmise. *Illinois Power Co.* v. *Wieland, supra; Southern Illinois and Kentucky Railroad Co.* v. *Johnson,* 321 Ill. 187; *East St. Louis Light and Power Co.* v. *Cohen,* 333 id. 218.

The verdict of the jury as to the compensation for the land taken was $1800, while no witness fixed its value as high as five dollars. While a *remittitur* to five dollars was required as to this item, the verdict could only have been arrived at by reason of some misconception as to the law covering damages in cases of this kind and the amounts fixed by the jury as to the other items of their verdict, and this would tend to show that the other items of their verdict were fixed under a like misconception.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*