(Nos. 1957 to 1964, both inclusive, and No. 1974, consolidated—

BELLE MOORE, NOS. 1957, 1958, 1959, 1960, MIKE PELALLIS AND ADELE PELALLIS, NO. 1961, GEORGE W. PEMBLE AND HANNAH PEMBLE, NO. 1962, JESS M. HERNANDEZ AND ELSIE HERNANDEZ, NO. 1963, WILLIAM ENGLAND AND KATHERINE ENGLAND, NO. 1964, WILLIAM M. EASTON AND NORMAN W. GEBHARDT, NO. 1974, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

WILKINS & BRECHER, for claimants.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

*Per Curiam:*

All of the above claims, as well as certain other claims now pending in this court, arise by reason of the construction by the respondent of the approach to the Cedar Street bridge in the city of East Peoria, all of which cases are known as East Peoria bridge cases.

All of the claimants herein are represented by the same counsel, and inasmuch as all of the cases grow out of the same transaction and involve the same questions, it has been agreed by counsel for the respective parties, that the cases be consolidated for the purpose of this hearing.

The facts as to local conditions at and during the time involved in these cases, as well as the facts which apply generally to all of such cases, have been fully set forth in the consolidated cases of *George Treharne and Rosie Treharne* vs. *State of Illinois,* No. 1934, and *Russell Youngman and Laura M. Youngman* vs. *State of Illinois,* No. 1935, to which reference is made therefor.

The following facts with reference to drainage facilities prior to and subsequent to the construction of the improvement in question have special reference to the cases other than the Treharne and Youngman cases:

Richland Place Addition prior to the construction of the improvement, was level, flat land with but little natural drainage. The drainage facilities consisted entirely of open ditches, there being no drain tiles whatsoever.

The improvement as originally contemplated provided for no surface drainage except by means of two 18-inch culverts, one beneath the fill on Clark Street and one beneath the fill on Sanford Street. However, after the completion of the improvement, and after the filing of some of the claims herein, a system of tile drains was installed by the State at a cost of approximately $6,000.00, in order to more adequately take care of the surface water. Such system consisted of approximately 3,730 feet of vitrified tile, with joints sealed with oakem grout laid as follows: a 10-inch tile along the south line of S. B. I. Route 121, commencing at Washington Street and extending to the intersection thereof with Monson Street; then a 12-inch tile from the last named point to the north and south alley between Clark and Monson Streets where it emptied into a large catch basin. There was also a stretch of 10-inch tile coming from the west entering into such catch basin. From such catch basin an 18-inch tile was extended south, to the east and west alley north of Maple Street; thence along said alley to the east line of Sanford Street, thence south on Sanford Street to connect with the drainage district ditch. There were numerous catch basins installed along the line of the fill to take care of the surface water which might flow north toward the fill or south from the side of the embankment.

There is a sharp conflict in the evidence as to the natural fall of the land and as to drainage conditions both before and after the construction of the improvement in question. The witnesses for claimants testified that prior to the construction of S. B. I. Route 121, the natural drainage was toward the north to Roosevelt Street, then westerly along the south side of Roosevelt Street to the drainage district ditch. Witnesses for the respondent testified that the natural drainage in a general way was to the west and southwest; that the high point in the addition was a line running east and west about

eighty feet south of the south line of the alley which parallels S. B. I. Route 121; that this line formed a sort of watershed and that the lots north of said line drained naturally toward Roosevelt Street and those south of such line drained to the south and west.

The witnesses for the State maintain that the surface drainage is much better now than it was at any time prior to the construction of the improvement; that the sewer system in question is properly constructed; that there is ample fall for the same; that it is maintained by the State and is under the supervision of local highway officers; that the inlets are kept free from debris; and that all surface water properly drains off within a short time after a rain.

The witnesses for the claimants, however, state that the drainage system is improperly constructed, that it does not properly carry off the water, that the inlets or openings thereto are a substantial distance above the level of the ground and therefore do not afford proper drainage for the surface water; also that the drainage system is not properly maintained; that the openings become clogged with weeds and dirt, and that as a result thereof water stands upon claimants' property for a considerable time after a heavy rain. Claimants whose houses have basements state that after a heavy rainfall their basements remain wet and damp for a considerable length of time, whereas such conditions never existed prior to the construction of the improvement in question.

Witnesses for the respondent contend that if there is any failure of the surface water to properly drain off, it results from the failure of the property owners to properly connect their open ditches with the sewer system installed by the State, and from the failure to keep such open ditches free from obstruction.

The facts which apply particularly to the several cases under consideration herein, to-wit, the facts as to the location of the several properties, and the character of the improvements thereon, if any, are as follows, to-wit:

No. 1957.

ALBERT J. MOORE AND BELLE MOORE.

Claimants, Albert J. Moore and Belle Moore, filed their claim herein as owners in joint tenancy of Lot No. 582.

Since the filing of such claim Albert J. Moore died, and Belle Moore thereby became the sole owner of said lot. Upon her motion it has heretofore been ordered that the cause proceed in her name as sole claimant.

Said Lot No. 582 is located on the west side of Monson Street between S. B. I. Route 121 and Maple Street, being approximately ninety-five (95) feet south of said S. B. I. Route No. 121, and eighty (80) feet north of Maple Street;— and has a frontage of forty (40) feet on Monson Street and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is six hundred (600) feet east of the Sanford Street fill.

This lot is improved by a six-room frame bungalow with two porches. There is a concrete block foundation, and a basement under the entire house; also an extra room for bath but bath fixtures have not been installed. The building is equipped for electricity but not for gas. There is no furnace, no sewer connection, no cesspool, and no plumbing fixtures. There is an outside toilet. The exterior side walls are of wood, and the roof is of asbestos shingles. The floors are of hardwood and the interior walls are of plasterboard construction.

The south end of the fill on the Monson Street approach to S. B. I. Route 121 is a short distance north of the north line of claimant's lot. The surface of the lot is level with the adjoining street, and there is no direct interference with ingress or egress over Monson Street as the result of the construction of the improvement in question.

## No. 1958.

### ALBERT J. MOORE AND BELLE MOORE.

Claimants, Albert J. Moore and Belle Moore, filed their claim herein as owners in joint tenancy of Lot No. 590. Since the filing of such claim Albert J. Moore died, and Belle Moore thereby became the sole owner of said lot. Upon her motion it has heretofore been ordered that the cause proceed in her name as sole claimant.

Said Lot No. 590 is located on the west side of Globe Street between S. B. I. Route 121 and Maple Street, being approximately fifteen (15) feet south ·of said S. B. I. Route 121, and one hundred sixty (160) feet north of Maple Street.

The lot has a frontage of forty (40) feet on Globe Street and a depth of one hundred twenty-seven and one-half (127½) feet. It is bounded on the north by the alley which is just south of and parallel with S. B. I. Route 121 at that point. The east or front line of the lot is nine hundred thirty (930) feet east of the Sanford Street fill.

The property is improved by a two-story five-room frame dwelling with a bath and enclosed porch. There is a concrete block foundation and a basement under the entire house. The building is equipped for electricity and gas, has a furnace, hot water heater, and bath and plumbing fixtures. There is a cesspool, but no sewer connections.

The exterior side walls are of siding, and the roof is of wood shingles. The floors and interior trim are of pine and the walls of plaster. There is a two-car garage at the rear of the home.

The Monson Street fill which constitutes the approach to S. B. I. Route 121 commences at or just south of the south line of claimant's lot and increases to a height of three (3) feet three (3) inches at the north end of the lot and thereby constitutes a material and substantial interference with ingress and egress over Monson Street.

## No. 1959.

### ALBERT J. MOORE AND BELLE MOORE.

Claimants, Albert J. Moore and Belle Moore, filed their claim herein as owners in joint tenancy of Lot No. 592. Since the filing of such claim Albert J. Moore died, and Belle Moore thereby became the sole owner of said lot. Upon her motion it has heretofore been ordered that the cause proceed in her name as sole claimant.

Said Lot No. 592 is located on the west side of Globe Street between S. B. I. Route 121 and Maple Street, being approximately ninety-five (95) feet south of said S. B. I. Route 121, and eighty (80) feet north of Maple Street;—and has a frontage on Globe Street of forty (40) feet and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is nine hundred thirty (930) feet east of the Sanford Street fill.

The lot is improved by a one-story frame four-room dwelling, with concrete block foundation, and has a basement

under the kitchen. The building is equipped for electricity but not for gas, and has a cesspool but no sewer connections. There is no furnace, no bath, and no plumbing fixtures.

The exterior side walls are of siding and the roof is of rubberoid construction. The floors and trim are of pine and the interior walls are of plaster. There is a small one-car garage and a shed near the rear of the lot. The building is in poor condition and in need of repairs.

The north line of this lot is approximately forty (40) feet south of the south end of the Globe Street fill which constitutes the approach of S. B. I. Route 121. The surface of the lot is level with the adjoining street, and there is no interference with ingress or egress over said Globe Street on account of the construction of the improvement in question.

## No. 1960.

### ALBERT J. MOORE AND BELLE MOORE.

Claimants, Albert J. Moore and Belle Moore, filed their claims herein as owners in joint tenancy of Lot No. 594. Since the filing of such claim Albert J. Moore died, and Belle Moore thereby became the sole owner of said lot. Upon her motion it has heretofore been ordered that the cause proceed in her name as sole claimant.

Said Lot No. 594 is located on the west side of Globe Street between S. B. I. Route 121 and Maple Street, being approximately one hundred seventy-five (175) feet south of said S. B. I. Route 121, and immediately adjoining the north line of Maple Street. This lot lies at the northwest corner of the intersection of Globe and Maple Streets and has a frontage of forty (40) feet on Globe Street and a depth of one hundred twenty-seven and one-half (127½) feet on Maple Street. The east or front line of the lot is nine hundred thirty (930) feet east of the Sanford Street fill.

The property is improved by a five-room frame cottage, in good condition, with concrete block foundation, and has no basement. The building is equipped for electricity and gas, has a bathroom, city water supply, and some plumbing fixtures. There is a cesspool, but no sewer connections, and no furnace.

The exterior side walls are of siding, and the roof is constructed of asbestos shingles. The floors and interior trim

are of pine, and the interior walls are of plasterboard, papered. There is a two-car garage at the rear of the house.

The north line of the lot is approximately one hundred twenty (120) feet south of the south end of the Globe Street approach to S. B. I. Route 121. The surface of the lot is level with the adjoining streets and there is no interference with ingress or egress over either of said streets on account of the construction of the improvement in question.

## No. 1961.

### MIKE PELALLIS AND ADELE PELALLIS.

Claimants are the owners of Lot No. 583 which is located on the west side of Monson Street between S. B. I. Route 121 and Maple Street, being approximately one hundred thirty-five (135) feet south of said S. B. I. Route 121, and forty (40) feet north of Maple Street; and has a frontage of forty (40) feet on Monson Street and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is six hundred (600) feet east of the Sanford Street fill.

The property is improved by a six-room bungalow with concrete block foundation and basement. The building is in good condition, is equipped for electricity and gas, is heated by hot water furnace (oil burner), has hot water heater, bathroom and fair plumbing fixtures. There is a cesspool but no sewer connections.

The exterior side walls are of siding, painted, and the roof is of asbestos shingle construction. The floors and interior trim are of pine, and the interior walls are of plasterboard.

The north end of this lot is approximately fifty (50) feet south of the south end of the Monson Street fill which constitutes the approach to S. B. I. Route 121. The surface of the lot is level with the adjoining street, and there is no interference with ingress or egress over Monson Street as the result of the construction of the improvement in question.

## No. 1962.

### GEORGE W. PEMBLE AND HANNAH PEMBLE.

Claimants are the owners of Lot No. 593 which is located on the west side of Globe Street between S. B. I. Route 121

and Maple Street, being approximately one hundred thirty-five (135) feet south of said S. B. I. Route 121, and forty (40) feet north of Maple Street; and having a frontage of forty (40) feet on Globe Street and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is nine hundred thirty (930) feet east of the Sanford Street fill.

The property is improved by a one-story five-room modern frame dwelling with concrete block foundation and a basement under the entire house. The building is equipped for electricity and gas, is supplied with city water, has a bathroom and kitchenette, with the usual plumbing fixtures. There is a cesspool, but no sewer connections, and no furnace. The exterior side walls are of asbestos shingles, painted, and the roof is of the same construction. The floors and interior trim are of pine and the interior walls are of plaster. There is a four-car tile garage near the rear of the lot.

The north line of this lot is approximately eighty (80) feet south of the south end of the aforementioned Globe Street fill. The surface of the lot is level with the adjoining street and there is no interference with ingress or egress over said Globe Street as the result of the construction of the improvement in question.

## No. 1963.
### JESS M. HERNANDEZ AND ELSIE HERNANDEZ.

Claimants are the owners of Lot No. 577 which is a vacant lot located on the east side of Clark Street between S. B. I. Route 121, and Maple Street, being approximately one hundred twenty-five (125) feet south of said S. B. I. Route 121, and eighty (80) feet north of Maple Street; and has a frontage of forty (40) feet on Clark Street and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is three hundred thirty (330) feet east of the Sanford Street fill.

The south end of the Clark Street fill which constitutes the approach to S. B. I. Route 121 is approximately forty (40) feet north of the north line of this lot. The surface of the lot is level with the adjoining street and there is no material interference with ingress or egress over said Clark Street as the result of the construction of the improvement in question.

## No. 1964.

### William England and Katherine England.

Claimants are the owners of Lot No. 591 which is located on the west side of Globe Street between S. B. I. Route 121 and Maple Street, being approximately fifty-five (55) feet south of said S. B. I. Route 121, and one hundred twenty (120) feet north of Maple Street; and has a frontage of forty (40) feet on Globe Street, and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is nine hundred thirty (930) feet east of the Sanford Street fill.

The property is improved by a three-room frame dwelling with two porches, and a large pantry. There is a concrete block foundation and a basement under the entire house. The building is heated by furnace, but has no bath or sewer connections and no plumbing fixtures. There is an outside toilet but no cesspool. The exterior side walls are of three-inch siding, painted, and the roof is of rubberoid construction. The floors and interior trim are of pine and the interior walls are of plasterboard.

The south end of the fill on Globe Street, which constitutes the approach to S. B. I. Route 121, is approximately on a line with the north line of this lot. The surface of the lot is level with the adjoining street and there is no material interference with ingress or egress over said Globe Street as the result of the construction of the improvement in question.

## No. 1974.

### William M. Easton and Norman W. Gebhardt.

Claimants are the owners of Lot No. 573 which is situated on the west side of Clark Street between S. B. I. Route 121 and Maple Street, being approximately one hundred eighty-five (185) feet south of said S. B. I. Route 121, and forty (40) feet north of Maple Street; and has a frontage of forty (40) feet on Clark Street, and a depth of one hundred twenty-seven and one-half (127½) feet. The east or front line of the lot is two hundred seventy (270) feet east of the Sanford Street fill.

The property is improved by a one-story three-room dwelling house with concrete block foundation, and no base-

ment. The building is of very cheap construction, and is in a poor state of repair. The exterior side walls are of stained shingles and the roof is of rubberoid construction. The floors and interior trim are of pine and the interior walls are of plasterboard. The building is equipped for electricity but not for gas; has no sewer connections, no cesspool, no bathroom, no furnace, and no plumbing fixtures. There is a small shed, and an outside toilet.

The north line of this lot is approximately eighty (80) feet south of the south end of the aforementioned Clark Street fill. The surface of the lot is level with the adjoining street and there is no interference with ingress or egress over said Clark Street as the result of the construction of the improvement in question.

Claimants contend that their several properties have been depreciated in value as the result of the construction of the improvement in question, and base their claims upon the following elements of damage, to-wit:

1. Dust blowing from the roadway.
2. Fumes from, and noise of passing automobiles.
3. Interference with the circulation of air over said properties.
4. Interference with their right of access.
5. Interference with the natural drainage, and failure on the part of the respondent to provide proper drainage.

A brief review of the authorities on the legal questions involved in claimants' contentions is necessary for a proper determination of the issues in all of these cases.

Where private property is not taken, but is damaged for public use, the property owner is entitled to recover the damages which his property has sustained, and the proper measure of damages in such case is the difference between the fair cash market value of the property unaffected by the improvement and its fair cash market value as affected by it.

*Dept. of Public Works* vs. *McBride,* 338 Ill. 347.
*Dept. of Public Works* vs. *Caldwell,* 301 Ill. 242.
*Brand* vs. *Union Elevated Co.,* 258 Ill. 133.

Benefits to land not taken may be set off against damages to land not taken. Damages must be direct and proximate, and not such as are merely speculative and remotely contingent.

*Dept. of Public Works* vs. *McBride,* 338 Ill. 347.

Depreciation in market value will not sustain a claim for damages to land not taken, unless it is from a cause which the law regards as a basis for damages.

*Illinois Power & Light Corporation* vs. *Talbott,* 321 Ill. 538.

*Rockford Electric Co.* vs. *Browman,* 339 Ill. 212.

What elements of damage, then, may be taken into consideration in determining whether there has been a depreciation in the value of claimants' property for which compensation must be made?

The Constitution of 1848 provided that private property should not be taken for public use without just compensation. No provision was made for property damaged, but not taken, and numerous cases arose in which a decided hardship was worked upon certain property owners whose property was seriously damaged but not taken, and who were therefore denied any compensation therefor. To remedy this situation, a change was made in the Constitution of 1870, and Section 13 of Article Two of such Constitution now provides that "Private property shall not be taken or damaged for public use without just compensation." The difference, in effect, between the two constitutional provisions is clearly set forth in the case of *Rigney* vs. *City of Chicago,* 102 Ill. 64 in which the Supreme Court, on page 78, said:

"Under the Constitution of 1848 it was essential to a right of recovery, * * * that there should be a direct physical injury to the corpus or subject of the property, such as overflowing it, casting sparks or cinders upon it, and the like; but under the present Constitution it is sufficient if there is a *direct physical obstruction or injury to the right of user, or enjoyment, by which the owner sustains some special pecuniary damage in excess of that sustained by the public generally, which, by the common law, would, in the absence of any constitutional or statutory provisions, give a right of action.*"

In the case of *Otis Elevator Co.* vs. *City of Chicago,* 263 Ill. 419, the court said, "The doctrine of the Rigney case has not been modified, limited, extended or departed from in any degree";—and such doctrine has been strictly adhered to and followed in many cases since the Otis Elevator case.

In the case of *Illinois Power and Light Corporation* vs. *Talbott,* 321 Ill. 538, the Supreme Court quoted with approval from the case of *Otis Elevator Co.* vs. *City of Chicago,* 263 Ill. 419, and also said:

"It was expressly or by necessary implication held in the Loeb case, the Aldis case and the Otis Elevator Co. case, that the measure of damages and the rules of evidence are the same in an action at law as in a condemnation proceeding, and it is repeatedly said that it is clear that the provision in *the Constitution of 1870 was not intended to reach every possible injury that might be occasioned by a public improvement, and that to warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. The physical disturbance need not be a physical disturbance or direct injury of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object.*"

The foregoing statement of the law has been approved in numerous cases since decided. *Illinois Power Co.* vs. *Wieland,* 324 Ill. 411; *Illinois Power and Light Corporation* vs. *Barnett,* 338 Ill. 499; *Rockford Electric Co.* vs. *Browman,* 339 Ill. 212.

In the *City of Winchester* vs. *Ring,* 312 Ill. 544, in considering a similar question, the court said:

"The provision of the Constitution that private property shall not be damaged for public use was not intended to reach every possible injury that may be occasioned by a public improvement. If an obstruction or improvement does not practically affect the enjoyment or use of property not taken, and thereby impair its value, no action will lie. To sustain an action for such damages the damage must be to property and not a mere personal inconvenience or injury, such as damage to trade or business. If the injury amounts only to an inconvenience or discomfort to the occupants of the property but does not affect the value of the property, it is not within the provision of the Constitution even though a personal action would lie therefor. The injury complained of must also be actual, susceptible of proof and capable of being approximately measured, and must not be speculative, remote, prospective or contingent. *To warrant a recovery the damage must be different in kind from that sustained by the people of the whole neighborhood. If it differs only in degree from that suffered in common by the people of the neighborhood the injury is not within the provision of the Constitution. Illinois Central Railroad Co.* vs. *Trustees of Schools,* 212 Ill. 406; *Hohmann* vs. *City of Chicago,* 140 id. 226.*"

That an abutting property owner may not be deprived without compensation, of the right to have light and air from the public highway, unobstructed by any encroachment on the street has been held in numerous cases. *Field, et al.* vs. *Barling,* 149 Ill. 556; *Barnard* vs. *City of Chicago,* 270 Ill. 27; *Gerstley* vs. *Globe Werneke Co.,* 340 Ill. 270.

This right of an abutting property owner to light and air from the adjoining street, however, does not give either of two adjoining owners of private property, a similar right over the property of the other, as the English doctrine of the prescriptive right of an owner of private property to unobstructed passage of light and air over the adjoining property does not apply in this State. *Guest* vs. *Reynolds,* 68 Ill. 478; *Keating* vs. *Springer,* 146 Ill. 481; *Baird* vs. *Hanna,* 328 Ill. 436.

In the case of *Nix* vs. *C. P. & St. L. Ry. Co.,* 137 Ill. 141, the court held that so far as the noise of passing trains would have a tendency to render plaintiff's premises less desirable as a place of residence and therefore less valuable in the market, such noise was a proper element of damage.

In the case of *C. M. & St. P. Ry. Co., et al.* vs. *Darke,* 148 Ill. 226, it appeared from the evidence that a railway was constructed opposite the plaintiff's premises and just across the avenue therefrom; that smoke, ashes and cinders in a considerable amount were blown from the railway onto the premises of the plaintiff, and the Supreme Court there held that the plaintiff was entitled to recover damages therefor.

In the case of *C. P. & St. L. Ry. Co.* vs. *Leah,* 152 Ill. 249, it appeared that the defendant's railway track crossed a street diagonally, opposite the plaintiff's premises, and only six and one-half feet therefrom at the nearest point;—and the court there held that the noise made by railway trains in passing and repassing was a proper element of damage.

In the case of *Aldrich* vs. *Metropolitan West Side Elevated Railway Co.,* 195 Ill. 456, the plaintiff owned two lots fronting west on Ashland Boulevard in Chicago, and improved by an expensive apartment building, and the defendant constructed an elevated electric railway on its private right-of-way in an easterly and westerly direction, across Ashland Boulevard, thirty-one feet north of plaintiff's apartment building. Plaintiff charged that on account of the darkening of the boulevard and the running of trains over it, his premises were deprived of air, ventilation and quiet, and that passage along the boulevard to and from his premises had been interrupted and access thereto had been impaired, and that he had also been damaged by reason of the noise of the trains, etc. In that case the Supreme Court distinguished the Darke case (148 Ill. 226) and the Leah case (152 Ill. 249)

on the ground that in each of those cases there was a direct physical disturbance of a public right which the plaintiff enjoyed in connection with his property, which gave to it an additional value, and that he sustained special damages with respect to his property, different from and in excess of that sustained by the public generally;—and in discussing the question said:

"The damages sued for are of the same kind and character as those sustained by the public generally in the ownership of property, which property may have been lessened in value by the construction and operation of the road. Noise, the obstruction of light and of view, are necessary incidents to the construction and operation of such roads and if every property owner could recover in all such cases, the making of public improvements would become practically impossible. * * * Whatever damage plaintiff may have suffered in depreciation of the value of her property was of the same kind and character as that suffered by the public generally, and common to the owners of property in a large city where noise, confusion and the disturbance of quiet appear to be the necessary results of the activities of city life."

The last mentioned case has never in any way been modified or overruled.

The cases cited by claimants involving claims for damages on account of dust, smoke, noise, etc. are all cases in which either steam or electric railways were involved. Our attention has not been called to any case in which damages have been allowed to an adjoining or nearby property owner as the result of noise, dust, or fumes arising from automobile traffic on a public highway.

It has been repeatedly held by our Supreme Court that inconvenience, expense, or loss of business necessarily occasioned to the owners of abutting property during the progress of the work by the construction of a public improvement, do not constitute damage to property not taken, within the meaning of the Constitution, but merely a burden incidentally imposed upon private property adjacent to a public work, and without which such improvements can seldom be made, and therefore give no cause of action against a municipality therefor. *Osgood* vs. *City of Chicago*, 154 Ill. 194; *Lefkovitz* vs. *City of Chicago*, 238 Ill. 23; *Chicago Flour Co.* vs. *City of Chicago*, 243 Ill. 218; *Peck* vs. *Chicago Railways Co.*, 270 Ill. 35, 40.

The Supreme Court of this State has held in numerous cases that where a property owner's right of access to his

property has been destroyed or interfered with, he is entitled to compensation for the damages sustained. *Rigney* vs. *City of Chicago*, 102 Ill. 64; *Barnard* vs. *City of Chicago*, 270 Ill. 27; *Lydy* vs. *City of Chicago*, 356 Ill. 230. As said in the case of *C. Hacker Co.* vs. *City of Joliet, et al.*, 196 Ill. App. 415:

"The difficulty lies in exactly defining this right of access; that it cannot be confined to the immediate access from street on which the premises abut is clear on the authority of *Rigney* vs. *City of Chicago*, 102 Ill. 64. * * * That it cannot be extended to interference with an abutting owner's access to his property by vacating or obstructing a street two or three blocks away is equally clear from the authority of *City of Chicago* vs. *Union Bldg. Assn.*, 102 Ill. 379."

In the Rigney case, the City of Chicago constructed a viaduct along Halsted Street and across Kinzie Street. Rigney was the owner of certain property located on Kinzie Street about 220 feet east of the viaduct and claimed that it cut off his communication with Halsted Street except by way of a stairs. It was held in that case that he was entitled to recover damages for an interference with his right of access.

In the case of *City of Chicago* vs. *Union Bldg. Assn.*, 102 Ill. 379, it was held that the closing of LaSalle Street in Chicago by the Board of Trade Building three and one-half blocks from the owner's abutting property did not have a right of action because the owner was not specifically or particularly injured.

In Elliott on Roads and Street, 3d edition, Volume 2, Section 1181, the rule is set forth as follows:

"Owners of land abutting upon neighboring streets or upon other parts of the same street, at least when beyond the next cross street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance."

In Lewis on Eminent Domain, 2d edition, Volume 1, Section 227, the author, after commenting on the Rigney case and other cases to the same effect, says (page 537):

"These cases settle the doctrine that an obstruction or interference with a public street or way, need not necessarily be in front of or contiguous to the property claimed to be affected thereby, in order to authorize a recovery. It is sufficient if it is such an obstruction or interference as produces a diminution in the value of the property, as distinguished from mere personal inconvenience to the owner."

In the case of *Gibbons* vs. *Paducah & Ill. R. R. Co.*, 284 Ill. 559, the Supreme Court, on page 563, said:

"Appellant's contention that to authorize a recovery in such a case as this the property, or some part of it, must abut on a street at the point vacated or obstructed is untenable. If the right to use the streets as a means of passing to and from his property is prevented or interfered with, it is a special damage to the property owner. It would seem absurd to say if obstructions had that effect still there could be no recovery unless the property abutted or bordered the street at the place of the obstruction. The mere right to pass to the property from a part of the street upon which the property abutted, and from the property to the street, when but a short distance from the property the street was so obstructed that no passageway was afforded beyond the obstruction, would be attended with the same character of injury as if the property abutted the obstruction."

While a city may change the grade of a street at its own pleasure, yet, when the grade is changed and sewers or drains are constructed in an imperfect manner, or where the inlets are negligently permitted to become obstructed, so that surface water cannot be carried off, and an adjoining property owner is damaged thereby, the city is liable for such damage.

> *Nevins* vs. *City of Peoria*, 41 Ill. 502.
> *City of Elgin* vs. *Kimball*, 90 Ill. 358.
> *Bouillon* vs. *City of Greenville*, 233 Ill. App. 500.

In cases involving damage to land not taken, the burden of proof is upon the property owner to prove the damages claimed.

> *Illinois Power and Light Corp.* vs. *Barnett*, 338 Ill. 499.
> *East St. Louis Light Co.* vs. *Cohen*, 333 Ill. 218.
> *Illinois Power and Light Corp.* vs. *Talbott*, 321 Ill. 538.

To set forth herein the application of the principles of law above set forth to the facts in each particular case, would extend this opinion to undue length. Suffice it to say that upon consideration of all of the evidence, so far as the same aplies to the several claims, and the view of the several properties as taken by the court, and upon consideration of the law, as the same applies to the facts in each case, we have reached the following conclusions, to-wit:

1. As to the claims for damages on account of dust blowing from the roadway, fumes from passing automobiles, and interference with the circulation of air over the premises of

the several claimants;—none of the claimants have shown any depreciation in the value of their respective properties, for which they are entitled to damages.

2. As to claims for damages on account of interference with the natural drainage, etc., Lots 577, 582, 590, 591 and 592 have each been depreciated in value to some extent, as the result of the construction of the improvement in question, the amount of depreciation in each case varying with the particular lot. Future damages can be obviated in each case by connecting the open ditches or other means of drainage of such lots with the sewer system installed by the respondent.

3. As to claims for damage on account of interference with the right of access, each and all of the lots involved in this proceeding have been depreciated in value to some extent as the result of the construction of the improvement in question, the amount of such depreciation in each case varying with the particular lot.

4. The total depreciation in value of each and all of the lots involved in this proceeding, as hereinbefore set forth, as the result of the construction of the improvement in question is as follows:

| | |
|---|---:|
| Lot 582—Albert J. Moore and Belle Moore | $450.00 |
| Lot 590—Albert J. Moore and Belle Moore | 900.00 |
| Lot 592—Albert J. Moore and Belle Moore | 350.00 |
| Lot 594—Albert J. Moore and Belle Moore | 275.00 |
| Lot 583—Mike Pelallis and Adele Pelallis | 450.00 |
| Lot 593—George W. Pemble and Hannah Pemble | 300.00 |
| Lot 577—Jess M. Hernandez and Elsie Hernandez | 50.00 |
| Lot 591—William England and Katherine England | 400.00 |
| Lot 573—William M. Easton and Norman W. Gebhardt | 75.00 |

IT IS THEREFORE ORDERED that awards be and the same are hereby entered in favor of the several claimants herein as follows, to-wit:

No. 1957—Belle Moore, owner of Lot 582, Four Hundred Fifty Dollars ($450.00).

No. 1958—Belle Moore, owner of Lot 590, Nine Hundred Dollars ($900.00).

No. 1959—Belle Moore, owner of Lot 592, Three Hundred Fifty Dollars ($350.00).

No. 1960—Belle Moore, owner of Lot 594, Two Hundred Seventy-five Dollars ($275.00).

No. 1961—Mike Pelallis and Adele Pelallis, owners of Lot 583, Four Hundred Fifty Dollars ($450.00).

No. 1962—George W. Pemble and Hannah Pemble, owners of Lot 593, Three Hundred Dollars ($300.00).

No. 1963—Jess M. Hernandez and Elsie Hernandez, owners of Lot 577, Fifty Dollars ($50.00).

No. 1964—William England and Katherine England, owners of Lot 591, Four Hundred Dollars ($400.00).

No. 1974—William M. Easton and Norman W. Gebhardt, owners of Lot 573, Seventy-five Dollars ($75.00).