(No. 3109—

GEORGE F. KRAMER AND LOUISE KRAMER, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1939.*

J. E. BAIRSTOW, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

In May, 1927, claimants purchased a tract of land within the corporate limits of the Village of Fox Lake, having a frontage of 220 feet on the public highway which is now known as S. B. I. Route No. 60, and extending westerly to Pistakee Lake a distance varying from ninety (90) feet at the north end to One Hundred Thirty (130) feet at the south end of the property. Such tract is located about two blocks from the railway station and the main business block in Fox Lake, and at the time of the purchase thereof by claimants, and continuously since that time, has been used for the purposes of a boathouse and boat works.

The land is situated on what is known as the Chain of Lakes, which furnishes a waterway from Wilmot, Wisconsin,

to McHenry, Illinois, by way of the Fox River from Wilmot, through Long Lake, Petite Lake, Bluff Lake, Lake Catherine, Channel Lake, Lake Marie, Grass Lake, Fox Lake, Nippersink Lake, Pistakee Lake, Pistakee Bay, and Fox River, as far as the dam below McHenry.

On account of its location, claimants' property is peculiarly suited to boat works and boat house purposes, and is one of the four pieces of property in that vicinity which has a frontage on both the State highway and the lake. S. B. I. Route No. 60 is the only hard-surfaced highway connecting that entire lake district.

The use of motor boats in the vicinity of Fox Lake and the Chain of Lakes region has increased very materially since claimants purchased said property. Although the population in the immediate vicinity of Fox Lake is normally about 1,000, it is increased to 18,000 or 20,000 during the summer season.

Claimants paid $20,000.00 for the property, which at that time had several buildings thereon. In the fall of the year in which the property was purchased, claimants constructed another building thereon, at a cost of approximately $3,000.00, constructed a retaining wall at a cost of $600.00, and installed certain machinery at a further cost of $1,000.00 to $1,200.00. The land is now improved by the following buildings, to wit: the North Building, which is a metal building 89.5 feet by 56 feet;—adjoining such building on the south is a covered shed 55 feet by 23 feet, and immediately south of such covered shed is a metal building 55 feet by 32 feet. A short distance south of the latter building is a concrete building, the main portion of which is 90.5 feet by 48.2 feet, with an extension on the south approximately 27 feet by 29 feet. At the southeast corner of such concrete building is a small frame building 24.3 feet by 20.3 feet.

The large concrete building has a concrete floor; the small frame building has a wooden floor, and the other buildings have no floors. The two large buildings, to wit, the most northerly building and the most southerly building, are located practically on the west right-of-way line of S. B. I. Route No. 60.

Claimants' property is bounded on the north by other private property, on the east by S. B. I. Route No. 60, on the

south by the channel connecting Pistakee Lake with Nipper-sink Lake, and on the west by Pistakee Lake.

One of the witnesses for the respondent stated that claimants' property is the finest boat works property on the whole Chain of Lakes; that there isn't anything to compare with it, situated as it is at the gateway to the lakes and to the channel.

Prior to the month of January, 1935, the highway which is now known as S. B. I. Route No. 60 was a gravel-surfaced road, and was on substantially the same level as the property of the claimants, the north property line being practically level with the roadway, and the south property line being about eighteen (18) inches below the level of such roadway.

Prior to said date (January, 1935) claimants maintained a filling station adjoining their south building, but within the limits of such highway, and also used for storage purposes the portion of such highway adjoining their buildings, which was not used by the public for travel.

In the month of January, 1935, the respondent com-menced the construction of a new bridge across the afore-mentioned channel connecting Pistakee Lake with Nippersink Lake, the elevation of which bridge was considerably higher than that of the old bridge, and therefore necessitated the raising of said State highway above its previous level. The work of construction was commenced on January 21, 1935, and completed on June 24th of the same year. The entire improve-ment consisted of a concrete bridge and a concrete pavement forty (40) feet in width, extending in both directions from such bridge.

A comparison of the elevation of the present concrete highway with that of the original highway shows that at the north line of claimants' property the concrete highway is five (5) feet above the level of the original highway; at a point One Hundred (100) feet south of the north line of the prop-erty, the concrete highway is six (6) feet above the level of the original highway, and at claimants' south property line the concrete highway is about four and one-half (4½) to five (5) feet above the level of the original highway.

In constructing the hard-surfaced roadway, the center line thereof was moved approximately twenty (20) feet closer to the claimants' property than it previously had been. By reason of the elevation of the bridge and highway, it has be-

come impossible to pass directly from the highway to claimants' property, and in order to afford a means of access thereto, a ramp was constructed immediately adjoining claimants' east property line and within the highway right-of-way, so that the only means of access to claimants' property by vehicle is from the north and extending in a southerly direction along the east side of claimants' buildings. A set of concrete steps has been constructed at the north end of the bridge, thereby affording access from claimants' property to the sidewalk across the bridge.

Claimants' property was used as a boathouse and boatworks for many years prior to the time they purchased the same, and it is conceded that its use for such purposes is the highest and best use to which the property was and is adaptable. Prior to the elevation of the roadway, the door to the most southerly building was on the east side of the building, adjoining the highway, and an overhead hoist had been constructed in the rear of the building. A large number of boats were launched from claimants' property, being transported thereto by truck or trailer. It was possible to back the trucks directly from the highway into the building, and under the hoist. The boats were then attached to the hoist and conveyed directly from the truck to the Lake. The elevation of the highway has made this procedure impossible. Claimants were required to change the entrance to their building from the east to the north side thereof, and although it is still possible to use the building, the means of access thereto is much less convenient than it previously was, and there is also considerable difficulty in the use of the aforementioned hoist.

Instead of backing directly from the highway into the east door of claimants' building, as heretofore, it is now necessary to proceed to the north end of the property, then down the ramp to claimants' most southerly building, enter the same from the north, and get under the hoist in the best manner possible under the circumstances.

The evidence also shows that on account of the change in the entrance to the south building, claimants were deprived of the use of a certain amount of space within the building, and also between the south building and the adjoining building, which had theretofore been used for storage purposes.

Prior to the elevation of the highway, claimants had not been bothered in any way by water in their buildings. Since

the elevation of the highway, and particularly during wet seasons, surface water from the highway comes down the ramp, and also over the shoulder of the highway, onto claimants' property and into their buildings, causing considerable difficulty, particularly in those buildings which have no floors. There was also evidence to the effect that the presence of water in the buildings caused the rusting of metal parts.

The improvement in question was confined within the limits of the pre-existing highway, and none of claimants' property was taken in the making of the improvement. Claimants contend, however, that their property has been damaged for public use, and that under the provisions of Section 13 of Article II of the Constitution, they are entitled to just compensation therefor.

Where private property is not taken but is damaged for public use, the property owner is entitled to recover the damages which his property has sustained, and the proper measure of damages in such case is the difference between the fair cash market value of the property unaffected by the improvement, and its fair cash market value as affected by it. *Dept. of Public Works* vs. *McBride*, 338 Ill. 347; *Dept. of Public Works* vs. *Caldwell*, 301 Ill. 242; *Brand* vs. *Union Elevated Co.*, 258 Ill. 133; *Grassle* vs. *State*, 8 C. C. R. 150; *Stein, et al.* vs. *State*, 8 C. C. R. 251; *Moore, et al.* vs. *State*, 8 C. C. R. 686.

However, depreciation in market value will not sustain a claim for damages to land not taken, unless it is from a cause which the law regards as a basis for damages. *Illinois Power and Light Corporation* vs. *Talbott*, 321 Ill. 538; *Rockford Electric Co.* vs. *Browman*, 339 Ill. 212; *Moore, et al.* vs. *State*, 8 C. C. R. 686.

The proper elements of damage which may be considered in determining whether there has been a depreciation in the market value of property were reviewed by our Supreme Court in the case of *Illinois Power and Light Corporation* vs. *Talbott*, 321 Ill. 538. In that case the court, on page 547, said:

"It is clear that the provision in the constitution of 1870 was not intended to reach every possible injury that might be occasioned by a public improvement, and that to warrant a recovery it must appear that there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives it an additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by

the public generally. The physical disturbance need not be a physical disturbance or direct injury of the tangible object of property rights, but must be a disturbance of a right which the owner enjoys in connection with his ownership of the tangible object."

This statement of the law has been approved in numerous cases since decided. *Illinois Power and Light Corporation* vs. *Wieland,* 324 Ill. 411; *Illinois Power and Light Corporation* vs. *Barnett,* 338 Ill. 499; *Rockford Electric Co.* vs. *Browman,* 339 Ill. 212.

The evidence abundantly shows that as the result of the improvement there is a material interference with claimants' right of access to their property; a lessening of rental value; a loss of storage space in buildings and on claimants' vacant property; and also that at certain times there is a flow of surface water onto the premises and in the buildings, which interferes with operations and causes metal parts to rust, which conditions did not exist prior to the making of the improvement.

Five witnesses besides George F. Kramer testified for the claimants on the question of values, and only one witness testified on behalf of respondent. The five disinterested witnesses for the claimants variously fixed the fair cash market value of the property prior to the making of the improvement from $22,000.00 to $30,000.00, and all but one stated that in his opinion the property had been depreciated fifty per cent (50%) as the result of the making of the improvement;— the other disinterested witness fixed the depreciation at 66 2/3%. The claimant, George F. Kramer, fixed the fair cash market value of the property prior to the making of the improvement at $25,000.00 to $30,000.00, and stated that in his opinion the value had depreciated two-thirds as the result of the making of the improvement.

Only one witness testified for the respondent on the question of damages. Such witness stated that in his opinion the property was benefitted as the result of the improvement in question. He also stated, however, that the benefits accruing to the claimants' property as the result of the construction of the highway were such benefits as accrued to the public at large.

Among the items which were considered by the claimants' witnesses in estimating the damage to the property, was the loss of business arising on account of the fact that claimants were no longer able to maintain their oil pump and therefore

had to remove the same. It appears, however, that such pump was located upon the public highway, and consequently any loss of business resulting from the removal thereof is not an item of damage for which the claimants are entitled to recover in this proceeding.

Another element of damage considered by some of claimants' witnesses was the loss of storage space between the claimants' building and the traveled portion of the highway, which space was eliminated by the change in, and elevation of the roadway. Claimants' buildings are constructed practically upon their east property line, and inasmuch as this storage space was located upon the public highway, claimants have no right to recover any damages as the result of their inability to use the same.

Under all of the testimony in the record, we feel that the damage to the claimants' property, based upon the elements which are properly considered in determining such damage, is Six Thousand Five Hundred ($6,500.00) Dollars.

It appears from the record that the claimants' property is encumbered by two mortgages, but the amount now due thereon does not appear of record.

Award is therefore entered in favor of the claimants, George F. Kramer and Louis Kramer, for the sum of Six Thousand Five Hundred Dollars; to be paid only upon delivery by claimants to the proper authorities of the respondent, of a release or releases duly executed by all persons, firms or corporations holding liens on said property on January 21st, 1935, the date of the commencement of work on the improvement, releasing the respondent of and from all claims and demands of every kind and nature arising out of or as the result of the construction of the aforementioned improvement.